**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Sammy Lee SMITH,
Defendant–Appellee.**

No. 88–6115.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1989.

Decided Sept. 28, 1989.

See also, 686 F.Supp. 1246.

W. Hickman Ewing, Jr., U.S. Atty., Lawrence J. Laurenzi, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Memphis, Tenn., for the U.S., plaintiff-appellant.

April R. Ferguson, Asst. Federal Public Defender (argued), Office of the Federal Public Defender, Memphis, Tenn., for Sammy Lee Smith, defendant-appellee.

Before GUY and RYAN, Circuit Judges, and DOWD, District Judge.*

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

RYAN, Circuit Judge.

This appeal presents a narrow question concerning application of the federal sentencing guidelines: whether in determining the sentencing range for a drug conviction based on criminal acts committed between November 1, 1987, the effective date of the sentencing guidelines, and January 15, 1988, the effective date of amendments to the guidelines, the district court should have considered drug quantities charged in a count dismissed under a plea agreement. We conclude that the district court erred in refusing to consider such drug quantities, and we reverse and remand for resentencing.

I.

In December 1987, defendant Sammy Lee Smith travelled from Miami to Memphis with several companions who intended to sell cocaine in Memphis. Defendant became aware of the scheme and agreed to guard the cocaine in a Memphis hotel room. On December 13, 1987, DEA agents executed a warrant and searched defendant's hotel room where they discovered defendant attempting to flush cocaine down the toilet. A two-count indictment was returned charging defendant with 1) possession of four ounces of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1); and 2) possession of ten grams[1] of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1).

Defendant entered a plea agreement under which he agreed to plead guilty to Count One in exchange for the prosecution's agreement to dismiss Count Two at the sentencing hearing. In the presentence report, the probation officer calculated a sentence range under the federal sentencing guidelines of 51 to 63 months' imprisonment, based on a base offense level of 26 under § 2D1.1 of the sentencing guidelines. The probation officer calculated this base offense level by considering the *total* drug quantities with which defendant was charged in Counts One and Two.[2]

At the sentencing hearing, defendant objected to the inclusion in the sentence-range calculation of drug quantities alleged in Count Two, which was to be dismissed under the plea agreement. After taking defendant's objection under advisement, the district court ruled that defendant's sentence should be calculated based only on drug quantities charged in Count One, the count of conviction. Based on the drug quantities charged in Count One, the court calculated defendant's base offense level as 18 under § 2D1.1.[3] The court then made a two-level deduction because defendant had been a minor participant, § 3B1.2(b), a two-level deduction because defendant had accepted responsibility for his acts, § 3E1.1, and a two-level addition because defendant had initially attempted to obstruct justice by flushing drugs down the toilet, § 3C1.1.[4]

---

1. There is confusion in the appellate record concerning the amount of cocaine base seized and charged. The government stated in its appellate brief that DEA agents seized forty-nine grams of cocaine base from defendant's hotel room, yet the government also stated, as did the district court in its sentencing ruling and defendant in his appellate brief, that Count Two charged defendant with possession, with intent to distribute, of ten ounces (approximately 280 grams) of cocaine base. These statements appear to be erroneous: Count Two of the indictment charges defendant with possession, with intent to distribute, of "approximately ten grams of cocaine base."

2. The Drug Quantity Table of § 2D1.1 of the sentencing guidelines directs a base offense level of 26 for offenses involving 500–1500 grams of cocaine. Under the Drug Equivalency Table of § 2D1.1, 1 gm of cocaine base equals 100 gms of cocaine. Therefore, Counts One and Two

involved a total of 1113 gms of cocaine calculated as follows:

| Count | | |
|---|---|---|
| One: | Four ounces cocaine = | 113 gms cocaine |
| Count | | |
| Two: | Ten gms cocaine base = | 1000 gms cocaine |
| | | 1113 gms cocaine |

3. The Drug Quantity Table of § 2D1.1 directs a base offense level of 18 for offenses involving 100–199 grams of cocaine. As set forth in note 2, Count One involved 113 gms of cocaine.

4. We observe that commentary note 4 to § 3E1.1 provides:

An adjustment under this section is not warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs the

The court thus calculated defendant's adjusted offense level as 16. The criminal history category was calculated as I. The guidelines recommend a sentencing range of 21–27 months' imprisonment. United States Sentencing Commission, *Guidelines Manual* at 5.2 (October 1987). The court sentenced defendant to 24 months' imprisonment and three years' supervised release, and the government timely filed this appeal.

## II.

■ The government argues that the district court erred in applying the sentencing guidelines by ruling that drug quantities charged in Count Two, which was dismissed pursuant to plea agreement, could not be considered in determining defendant's base offense level. The district court held that

> the conduct necessary to support inclusion in the Base Offense Level must be established by a finding of the jury, a plea of guilty confirmed by a finding of guilt in open court, or a stipulated offense other than the offense of conviction on a plea of guilty or *nolo contendere* ....

Initially, we note that the version of the federal sentencing guidelines applicable to defendant, whose criminal conduct occurred in December 1987, is the version promulgated in October 1987. This version applies to sentencing for criminal acts committed between November 1, 1987, the effective date of the sentencing guidelines, and January 15, 1988, the date of amendments to the guidelines. *United States v. Sailes*, 872 F.2d 735, 736 n. 1 (6th Cir.1989).

To determine the applicable sentencing guideline, a court must first consider § 1B1.2, which, prior to amendment on January 15, 1988, provided:

Applicable Guidelines

(a) The court shall apply the guideline in Chapter Two (Offense Conduct) most applicable to the offense of conviction....

(b) The court shall determine any applicable specific offense characteristic, victim-related adjustment, or departure from the guidelines attributable to offense conduct, according to the principles in § 1B1.3 (Relevant Conduct).

*Guidelines Manual* at 1.15 (October 1987). Defendant argues that because § 1B1.2(a) directs application of the guideline "most applicable to the *offense of conviction*," a sentencing court may consider only drug quantities in the count of conviction.

We are unpersuaded by this argument. It is undisputed that "the guideline most applicable to the offense of conviction" in this case is § 2D1.1, "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)." This guideline section sets forth various base offense levels according to whether the offense resulted in death or serious bodily injury and based on drug quantities involved. *Guidelines Manual* at 2.37–2.39. The commentary to the October 1987 version of § 1B1.2 stated:

> Where there is more than one base offense level within a particular guideline, the determination of the applicable base offense level is treated in the same manner as a determination of a specific offense characteristic. Accordingly, the "relevant conduct" criteria of § 1B1.3 are to be used....

*Guidelines Manual* at 1.16. Therefore, in a case, as here, involving a sentencing guideline with more than one base offense level, the October 1987 version of § 1B1.2 instructed a court to consider the relevant conduct criteria of § 1B1.3.

The October 1987 version of § 1B1.3 defined "relevant conduct" for sentencing purposes as conduct that was "part of the same course of conduct, or a common scheme or plan, as the offense of conviction." *Guidelines Manual* at 1.17 (October 1987). Defendant's possession of the drug quantities charged in Count Two clearly fits this definition and therefore

---

trial or the administration of justice (see [section] 3C1.1), regardless of other factors.

Since the prosecution did not raise the issue addressed by note 4, we do not reach it.

should be considered "relevant conduct" for sentencing purposes.

This interpretation of the guidelines is consistent with the view taken by this court in *United States v. Sailes*, 872 F.2d 735 (6th Cir.1989). Sailes was charged with possession, with intent to distribute, of two batches of cocaine, totalling 816 grams. The cocaine had been placed at Sailes's residence by her son, who Sailes knew was a drug dealer. Sailes was aware of the presence at her residence of one of the batches of cocaine, weighing 36 grams, but was unaware of the other batch, which weighed 780 grams. She pleaded guilty to possession, with intent to distribute, of 36 grams of cocaine; the district court, however, sentenced her to a sentence at the upper end of the guideline range for an offense involving over 500 grams of cocaine because the quantity involved *in the overall scheme* was 816 grams.

On appeal to this court, Sailes argued that the district court erred in determining her base offense level by considering the entire quantity of cocaine charged. The panel accepted the government's argument that

> [Sailes's son's] possession, with intent to distribute, of the 780 grams of cocaine [at Sailes's residence], together with his possession, with intent to distribute, of the 36 grams in the [residence], form part of the same course of conduct or a common scheme or plan under § 1B1.3. By aiding or abetting part of the scheme or course of conduct, Mrs. Sailes aided or abetted all of it.

*Sailes*, 872 F.2d at 738. The court therefore affirmed the sentence imposed by the district court.

As recognized by the *Sailes* panel, the conclusion that drug quantities involved in the overall scheme, including quantities charged in a dismissed count, should be considered in determining the sentencing range under the guidelines is "buttressed" by amendments to the guidelines that became effective on January 15, 1988. As amended, § 1B1.2(b) explicitly instructs the sentencing court to consult the "relevant conduct" criteria of § 1B1.3:

> After determining the appropriate offense guideline section pursuant to subsection (a) of this section, determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct).

*Guidelines Manual* at 1.15 (January 15, 1988). Section 1B1.3, as revised, provides that "the base offense level where the guideline specifies more than one base offense level" shall be determined for offenses listed in § 3D1.2, which includes offenses covered by § 2D1.1, by consideration of "all acts ... committed or aided and abetted by the defendant ... that were *part of the same course of conduct or common scheme or plan as the offense of conviction.*" *Guidelines Manual* § 1B1.3(a)(1), (2), at 1.17 (January 15, 1988) (emphasis added). Moreover, the amended commentary to § 1B1.3 states:

> [I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

*Guidelines Manual* at 1.19 (January 15, 1988). The January 15, 1988, amendments therefore make clear that a sentencing court should consider all drug quantities—including quantities charged in dismissed counts—that were part of the "same course of conduct or part of a common scheme or plan as the count of conviction."

Although the January 15, 1988, amendments are not directly applicable to defendant because his criminal activity occurred before the effective date of the amendments, the Commission stated that the change to § 1B1.2 was to "clarify the operation of the guidelines." 53 Fed.Reg. 1287 (1988). Similarly, the commentary to the amended § 1B1.3 states that the amendments merely "clarify the intent underlying § 1B1.3 as originally promulgated." *Guidelines Manual* at 1.20 (January 15, 1988). "[T]he Commission's view of its purpose in revising its guidelines and commentary is entitled to considerable deference." *United States v. Guerrero*, 863 F.2d 245, 250 (2d Cir.1988). We agree with

**108**

the Second Circuit's conclusion in a similar case that the

> change in the language of [§ 1B1.2] only clarif[ies] a meaning that was fairly to be drawn from the original version. The original version of section 1B1.2 instructed a sentencing judge to select the guideline most applicable to the "offense of conviction." For [defendant], that offense was distributing a controlled substance, an offense defined by 21 U.S.C. § 841(a)(1). The sentencing judge was entitled by the terms of section 1B1.2 to look to section 1B1.3 to determine the seriousness of the offense for the purpose of applying the Sentencing Guidelines, and that section instructed him to consider acts that are part of a common scheme as "conduct relevant to the offense of conviction" for purposes of determining the seriousness of that offense.

*United States v. Guerrero*, 863 F.2d 245, 250 (2d Cir.1988).[5]

Based on the language of the sentencing guidelines in effect in December 1987 and the January 15, 1988, amendments explicating the intent underlying §§ 1B1.2 and 1B1.3, we hold that the district court erred by holding "that the conduct necessary to support inclusion in the Base Offense Level must be established by a finding of the jury, a plea of guilty confirmed by a finding of guilt in open court, or a stipulated offense other than the offense of conviction on a plea of guilty or *nolo contendere*." In its sentencing determination, the district court should have considered all conduct that was part of the same course of conduct or a common scheme or plan as the offense of conviction—including possession of the drugs charged in Count Two.[6]

We note that due process requires that *some* evidentiary basis beyond mere allegation in an indictment be presented to support consideration of such conduct as relevant to sentencing. "[A]s a matter of due process, factual matters may be considered as a basis for sentence only if they have some minimal indicium of reliability beyond mere allegation." *United States v. Baylin*, 696 F.2d 1030, 1040 (3d Cir.1982); *see also Williams v. Oklahoma*, 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959). This due process limit on the evidence a sentencing court may properly consider is recognized in the commentary to § 6A1.3 of the guidelines, which provides:

> In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information may be considered, so long as it has *"sufficient indicia of reliability to support its probable accuracy."* Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." Unreliable allegations shall not be considered.

*Guidelines Manual* at 6.2 (1987) (citations omitted; emphasis added).

Therefore, we reverse the district court's sentencing of defendant and remand this case for resentencing with the instruction that all conduct that formed part of defen-

---

5. That a sentencing court should consider conduct for which the defendant was not convicted is consistent with preguidelines practice. The Supreme Court has held: "[B]efore making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *see also* 18 U.S.C. § 3661 (formerly § 3577) ("No limitation shall be placed on the information concerning the background, character, and conduct of a person ... which a court ... may receive and consider for the purpose of imposing an appropriate sentence.").

6. Implicit in our holding is our further determination that the inclusion, for purposes of sentencing, of the quantity of drugs implicated in Count Two of the indictment does not constitute a "mitigating circumstance" resulting in an unjust punishment compelling a downward departure from the applicable guideline range. Although the guidelines do authorize departures from base offense levels due to mitigating circumstances not contemplated by the Commission in formulating the guidelines, *see* 18 U.S.C. § 3553(b), we are persuaded that the circumstances presented by this case were considered by the Commission.

dant's criminal course of conduct, scheme or plan, including possession of the drug quantities charged in the dismissed count, should be considered in determining defendant's sentence, so long as such conduct is supported by "some minimal indicium of reliability beyond mere allegation."

REVERSED and REMANDED.