**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ira SILVERMAN, Defendant–Appellant.**

No. 88–3826.

United States Court of Appeals,
Sixth Circuit.

Argued April 13, 1989.
Decided Nov. 21, 1989.

Terry Lehmann (argued), Office of the U.S. Atty., Cincinnati, Ohio, James E. Rattan, and John O. Braud, Asst. U.S. Attys., Office of the U.S. Atty., Columbus, Ohio, for plaintiff-appellee.

David H. Bodiker (argued), Bodiker & Holland, Columbus, Ohio, for defendant-appellant.

Before JONES, WELLFORD and GUY, Circuit Judges.

WELLFORD, Circuit Judge.

Defendant Ira Silverman appeals the sentence imposed by the district court pursuant to the Federal Sentencing Guidelines (Guidelines), the constitutionality of which was recently upheld in *Mistretta v. United States*, — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). For the following reasons, we remand the case to the district court for further consideration as required by 18 U.S.C. § 3742(f)(1).

On March 17, 1988, a grand jury indicted defendant, Ira Silverman, under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, for possession with intent to distribute cocaine, and travel in interstate commerce to promote a narcotics business enterprise in violation of 18 U.S.C. § 1952. On April 25, 1988, Silverman withdrew his previously entered plea of not guilty to count one of the indictment, and pursuant to a plea agreement with the government, entered a plea of

guilty only to that count. The government agreed to dismiss count two of the indictment at the time of sentencing. The count one offense occurred on February 15, 1988. This case is therefore governed by the statutory sentencing guidelines which became effective November 1, 1987. Application of these guidelines to this case is the focus of this controversy on appeal.

The district court conducted a sentencing hearing with regard to a decision under the new sentencing guidelines. Defendant, concerned about waiving his fifth amendment rights, decided not to testify at the hearing and presented no evidence, but there was evidence presented bearing on Silverman's past drug activity.

The district court had before it, as did the prosecution and defendant, a presentence report which revealed that defendant was under investigation as a large scale cocaine distributor in the summer of 1987. On October 28, 1987, DEA agents in Columbus, Ohio were advised by a confidential informant that defendant was the head of a cocaine trafficking ring which distributed kilograms of cocaine in Columbus and Athens, Ohio. The informant further advised that in August of 1987, defendant supplied the informant and another co-conspirator with a kilogram of cocaine to sell. The informant and co-conspirator became indebted to defendant for this cocaine. Defendant was also implicated in cocaine distribution by a confidential informant reporting to the Athens Police Department and the Ohio Bureau of Criminal Investigation. The report goes on to state that on November 11, 1987, the DEA informant made a controlled purchase of cocaine from one of his co-conspirators. The cocaine was tested and found to be ninety-three percent pure. On February 14, 1988, the informant arranged to purchase a fourth of an ounce of cocaine from his co-conspirator. When he arrived on February 15, 1988, he was told that defendant had the cocaine, and that he would have to return later. When the informant met with defendant, defendant took the money from the informant and refused to give him any cocaine, saying that he was applying the money to a pre-existing debt. Defendant left the resi-

dence in a rented limousine and was stopped by narcotics officers. In defendant's gym bag was a bag containing 52.9 grams of cocaine which was ninety-three percent pure. Defendant admitted to the probation officer that he was going to Athens, Ohio that day to attempt to sell the cocaine, and that he had been involved previously in drug related activities in Athens and Meigs Counties. Defendant denied distributing multiple kilograms of cocaine in Central Ohio.

The district court determined that the offense involved in the guilty plea and the other reported 1987 drug offense involving a kilo of cocaine "were of the same character," and determined also that "the quantities of drugs would be combined for purposes of determining the offense level even though the offenses occurred on separate days." 692 F.Supp. 788. This was warranted, according to the district court, under § 3D1.2(d) of the guidelines, which it described as providing for "grouping of counts where the offense level is determined largely on the basis of the quantity of the substance involved" including offenses such as trafficking in drugs and possession to commit trafficking.

The district court further determined that the alleged prior drug activity (involving the kilo of cocaine) and the offense to which Silverman pleaded guilty "were part of the same course of conduct or common scheme or plan" for purposes of § 1B1.3(a)(2). Judge Graham reached this conclusion based on an analogy to admissibility of evidence of prior bad acts under Fed.R.Evid. 404(b).

He described the following additional "facts" from the presentence report:

In October of 1987, he learned from a confidential informant that the informant had been obtaining cocaine from defendant during the summer of 1987 for the purpose of selling it. The informant reported that in July and August of 1987, defendant gave a kilogram of cocaine to the informant and a co-conspirator, identified as James Michael Mourning, for the purpose of selling it. They had a

hard time selling that quantity of cocaine and collecting from their distributors, and ended up owing money to defendant. The informant's information was corroborated by Mike Mourning upon his arrest on February 15, 1988. Mike Mourning told Agent Robins that he had been selling cocaine for defendant for two to three years and that he had been involved in the distribution of the kilogram of cocaine. Mike Mourning also stated that he had gone to New York on two occasions and obtained a half pound of cocaine from defendant each time. He stated that defendant owned the safe which was kept at the Mourning address.

The district court concluded, then, in light of these facts, that the "prior transaction which resulted in a debt owed to defendant thus became relevant.... It bore upon Silverman's motive and intent in the February [indictment] incident." The district court found that defendant admitted that he planned to sell the "two ounces of cocaine found in his possession" and "had been involved in previous drug related activities." Supporting his analysis, the district court found that the offenses might be subject to joinder under Fed.R.Crim.P. 8 "since the offenses were of the same type." The district court stated, in summary, that it was not required under guideline sentencing to "ignore evidence that the defendant was a major drug supplier just because he happened to be in possession of only a relatively small amount of cocaine" when arrested.

Deciding that the alleged prior drug activity was relevant, the district court found it to be "supported by reliable evidence" from the presentence report.

In addition, DEA agent Robins testified at the sentencing hearing that he had been investigating Silverman for drug dealing. His testimony indicated to the district court:

... that defendant is a drug dealer of major proportions. On the day of the offense, defendant, although allegedly a person of few assets, hired a limousine to

travel to Athens, Ohio. When the informant arrived to purchase cocaine, defendant took control of the situation and exercised dominion over the cocaine and the money. His own admission that he intended to go to Athens, Ohio that day to sell the cocaine belies any notion that he had given up dealing in narcotics. The Court finds that far from being a casual bystander with minimal involvement in the offense, defendant was a central, controlling and highly culpable actor in the instant offense.

Robins further stated that his investigation revealed that the informant's information was consistently accurate, and that Silverman was also being investigated by other Ohio authorities and Athens, Ohio, police. By a preponderance of the evidence, then, the district court found the information and evidence submitted indicating substantial prior activity in drugs by Silverman to be "reliable" and "corroborated," and the "appropriate base offense level [to be] 26."

The district judge, after making these sentencing determinations, refused to allow Silverman to withdraw his guilty plea, holding that "[T]he fact that a defendant receives a higher sentence under the guidelines than he anticipated does not constitute grounds in this case for allowing defendant to withdraw his guilty plea." He overruled defendant's objections to the information, above related, contained in the pre-sentence report based on hearsay, irrelevance, and remoteness. He overruled most of the specific objections to consideration of the circumstances of the offense, specifically holding also that Silverman kept a safe at the Mourning residence, the combination of which Mike Mourning did not know. The district court added three points to the base offense for Silverman's degree of culpability as a "drug dealer of major proportions," and a "central, controlling and highly culpable actor in the instant offense." At the same time, the district court approved the recommendation that two points be dropped for acceptance of responsibility.[1] Finally, the district court

---

1. This despite the fact that Silverman denied

and did not accept responsibility for being a

sentenced Silverman to 87 months, the highest level within the range of a total offense level of 27 (base offense level of 26, plus 3 as a major drug dealer, less 2 for admitting responsibility). This is not a departure case, then, but it involves a number of questions about the process by which the sentencing court reached an offense level much higher than would be indicated by reference to the charge to which Silverman pled guilty.

### 1. Burden of Proof and Evidence at Sentencing Hearing

■ The preponderance of the evidence standard applies to contested facts in sentencing proceedings. *United States v. Urrego–Linares*, 879 F.2d 1234, 1238 (4th Cir. 1989); *United States v. Lee*, 818 F.2d 1052 (2d Cir.), *cert. denied*, 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987); *see McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (preponderance standard constitutional under state statute); *United States v. Davis*, 710 F.2d 104, 105–07 (3d Cir.) (and cases cited therein), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983) (preponderance standard constitutional when prescribed by federal statutes); *United States v. Dolan*, 701 F.Supp. 138, 140 (E.D.Tenn. 1988) (preponderance standard applies to sentencing guideline facts); *United States v. Ruelas–Armenta*, 684 F.Supp. 1048 (C.D.Cal.1988). The government bears the burden to establish enhancement factors, where contested. The district court applied this standard to its factual determinations, and we find no error in this respect.

■ Section 6A1.3 sets out that the court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial" if satisfied with its reliability. In this case the district court properly followed this guideline in its consideration of other evidence not necessarily admissible under the rules of evidence, including hearsay information it deemed corroborated and reliable. *See* 18 U.S.C. 3577 (stating, "[n]o limitation

shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence"); *see also United States v. Rodriguez*, 765 F.2d 1546, 1555 (11th Cir.1985) (noting limitations).

### 2. Course of Conduct Determination

This case involves problems created by the Sentencing Commission's decision to move toward a "real offense" sentencing procedure, rather than one based on the "charge offense." Aggregating quantities of drugs for purposes of determining the offense level indicated a decision to look to the "real offense" despite an indictment that charged no conspiracy and alleged only the dates of February 14 and 15, 1988 as relevant to the substantive cocaine charge (involving less than 53 grams). Silverman was charged specifically with possession with intent to distribute (less than 53 grams of cocaine) on February 15, 1988. He was also charged with unlawfully traveling in interstate commerce on February 14, 1988, with the intent to carry on this unlawful business enterprise.

The United States Sentencing Commission discusses this real offense versus charge offense question in part 4(a) of the Introduction to the Sentencing Guidelines:

One of the most important questions for the Commission to decide was whether to base sentences upon the actual conduct in which the defendant engaged regardless of the charges for which he was indicted or convicted ("real offense" sentencing), or upon the conduct that constitutes the elements of the offense with which the defendant was charged and of which he was convicted ("charge offense" sentencing).

.    .    .    .    .

The Commission abandoned the effort to devise a "pure" real offense system and instead experimented with a "modified real offense system", which it pub-

major drug dealer nor involved in the kilo co-                caine transaction.

lished for public comment in a September 1986 preliminary draft.

. . . . .

The Commission, in its January 1987 Revised Draft and the present guidelines, has moved closer to a "charge offense" system. The system is not, however, pure; it has a number of real elements ...

. . . . .

Finally, it is important not to overstate the difference in practice between a real and a charge offense system. The federal criminal system, in practice, deals mostly with drug offenses, bank robberies and white collar crimes (such as fraud, embezzlement, and bribery). For the most part, the conduct that an indictment charges approximates the real and relevant conduct in which the offender actually engaged.

The Commission recognizes its system will not completely cure the problems of a real offense system. It may still be necessary, for example, for a court to determine some particular real facts that will make a difference to the sentence.

The plea agreement in this case acknowledges a maximum potential sentence of twenty years and a very substantial fine. The plea agreement also contained this language:

4. Defendant IRA SILVERMAN agrees to testify truthfully and completely concerning all matters pertaining to the Indictment returned herein and to any and all other illegal drug transactions in which he may have been involved or as to which he may have knowledge. Defendant further agrees to provide a complete statement to authorities of the United States concerning such matters prior to the entry of his guilty plea pursuant to this agreement. Defendant agrees to submit to supplemental debriefings on such matters whenever requested by authorities of the United States, whether before or after his plea is entered.

5. If such plea of guilty is entered, and not withdrawn, and the Defendant IRA SILVERMAN acts in accordance with all other terms of this agreement, the United States Attorney for the Southern District of Ohio agrees to seek leave of Court at the time of sentencing to dismiss Count 2 of the Indictment and not to file additional charges against Defendant IRA SILVERMAN based on his activities charged in the Indictment or based on other illegal drug transactions in the Southern District of Ohio occurring prior to the date of the Indictment and as to which Defendant gives testimony or makes statements pursuant to this agreement.

6. Defendant IRA SILVERMAN understands that this agreement does not protect him from prosecution for perjury, should he testify untruthfully, or for making false statements, nor does it protect him from prosecution for other crimes or offenses as to which he does not make admissions or give truthful information and which the United States discovers by independent investigation. Further, should Defendant IRA SILVERMAN fail to comply fully with the terms and conditions set forth herein or should he fail to appear as required for sentencing, this agreement is void and of no effect, and Defendant IRA SILVERMAN shall be subject to prosecution as if the agreement had never been made.

7. It is agreed that if the Court refuses to accept any provision of this Plea Agreement, neither party is bound by any of its provisions, Defendant IRA SILVERMAN may withdraw his guilty plea, and the United States Attorney for the Southern District of Ohio may proceed with prosecution pursuant to the Indictment without prejudice.

Nowhere in the record is it reflected that the district court specifically "accepted" the plea agreement including all its provisions, but, of course, Silverman did plead guilty only to count one; the government dismissed count two of the indictment as agreed, and it filed no further drug charges against Silverman.

Section 6B1.2 deals with "standards for acceptance of plea agreements." Under circumstances applicable here, the court

"may accept the agreement if the court determines; for reasons stated on the record, that the *remaining* charges adequately reflect the seriousness of the *actual* offense behavior." (Emphasis added.)

Defendant's appellate brief concedes that on the date set out in the indictment the confidential informant "owed money to the Mournings and/or to this defendant;" that they applied the money given by him for drugs to the prior debt without delivering to him the cocaine sought.

Defendant's position was to oppose consideration by the court of his past history of alleged extensive drug dealing. Defendant sought to limit consideration of evidence only to that "admissible at trial" and that proof on factors relevant to the offense level be required by "clear and convincing evidence." He also sought to limit the sentencing hearing matters to allegations previously set forth in the presentence report (not the supplemental material later presented). He sought a ruling that he could testify in response to any such evidence without waiving his fifth amendment privilege. If the ruling were adverse to defendant's motions in this regard, Silverman sought to withdraw his guilty plea.

The district court did not specifically rule on these matters, but it did consider a later memorandum on past history of relevant conduct, dated August 19, 1988, which related to information concerning (1) investigation of Silverman by other authorities of earlier cocaine distribution, (2) a purported list of drug dealers in Silverman's handwriting obtained in a search of the limousine, (3) Silverman's posting while a college student of a $10,000 cash bond in less than two hours in 1987, and (4) a November, 1987 cocaine transaction "with Silverman underlings [which] involved 93% pure cocaine."

In selecting the appropriate sentence under the Guidelines, the district court should first "apply the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of *conviction*. § 1B1.2(a) (emphasis added). In this case, § 2D1.1 is the most applicable section. Defendant pleaded guilty to possession with the intention to distribute 52.90 grams of cocaine.

Next, the district court should determine the appropriate guideline range in accordance with § 1D1.3 which sets out "relevant conduct." This section states in pertinent part:

The conduct that is relevant to determining the applicable Guideline range includes that set forth below.

(a) [offense conduct] and [adjustments] including ... specific offense characteristics ... determined on the basis of ...

(1) All acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission ... or that otherwise were in furtherance of that offense;

(2) *Solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts*, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction; ...

(3) all harm or risk of harm that resulted from the acts or omissions specified....

(4) the defendant's state of mind, intent, motive and purpose in committing the offense; and

(5) any other information specified in the applicable guideline.

(Emphasis added.)

Once the sentencing court determines the applicable guideline range, it may utilize a wide range of information in choosing a point within that range. Guideline § 1B1.4. The commentary to this section provides the example that, "if the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the Guidelines would provide a reason for sentencing at the top of the Guideline range." In addition, this information may, in proper circumstances, provide a basis for departing from the guideline sentencing range.

The guidelines are not clear as to what information the court can consider in determining the applicable guideline sentencing range in cases in which it has the option of considering conduct, under the relevant conduct provisions, for which the defendant was not convicted or charged. The question posed here is whether the alleged sale of one kilogram of cocaine in October, 1987, and other uncharged drug activities can be considered under guideline § 1B1.3 to increase the applicable guideline sentencing range listed in guideline § 2D1.1(a)(3), applicable to drug trafficking or possession.

Guideline § 3D1.2(d), referred to in § 1B1.3, states:

(d) counts are grouped together if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

(Guideline § 2D1.1 is included under § 3D1.2(d).)

While § 1B1.3 "prescribed rules for determining the applicable guideline sentencing range," (Commentary, p. 1.18 January 15, 1988), § 3D1.2(d), referred to in § 1B1.3, contains the heading, "groups of closely-related *counts*" (emphasis added) and subsection (d) states that *"counts* are grouped together if the offense level is determined largely on the total basis of harm ... the quantity of substance involved ... or if the offense behavior is ongoing or continuous in nature *and the offense guideline is written to cover such behavior."* (Emphasis added.)

We have some doubt whether § 3D1.2(d) applies under the circumstances of this case. It deals specifically with grouping *counts* together; here, there is but one substantive count to which a guilty plea by agreement was submitted; the other count, involving a maximum base offense level score of 6, was dismissed. Section 3D1.2(d) also relates to grouping of *counts*, not to aggregating quantity of drugs.

Section 1B1.3 relevant conduct factors include (1) all acts for which defendant is "accountable that occurred during the commission of the offense or conviction," or (2) *"solely in respect to offenses of a character for which § 3D1.2(d) would require grouping* of multiple counts, all acts ... that were part of the same *course of conduct* ... or plan as the offense conviction;"* (Emphasis added). In supplementary illustrations to § 3D1.2, the Commission states that "the intent of § 3D1.2 is to *group together '[a]ll counts* involving substantially the *same* harm.'" (p. 1 Dec. 1987). The "Background" comments to § 1B1.3, however, state that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the *count of conviction."* (Emphasis added.)

"Section 3D1.2(d) must be read carefully and the offense guideline should be consulted to make sure that grouping under subsection (d) is in fact appropriate," (Supp. illustrations, Chapter Three, Part D, p. 8 Dec. 1987). *See also* Example D.10 under this heading.

In the Sentencing Commission's publication, "Questions Most Frequently Asked About the Sentencing Guidelines," the following question is posed: "If the defendant is indicted on a drug conspiracy charge and multiple substantive counts of drug distribution and pleads to only one substantive count, are the amounts of drugs from the conspiracy and other substantive counts added to the drugs in the count of conviction for purposes of guideline calculation?" This is the answer of the commission:

Yes, *if they meet the criteria for relevant conduct* and are supported by sufficient evidence (it would appear that the most courts would employ a "preponderance of the evidence" standard). The January 15 revisions to the relevant conduct guideline more clearly explain the behavior that was part of the same course of conduct or common scheme or

plan as the offense of conviction is considered relevant conduct.

In addition, the Background notes to the section state that "conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable Guideline sentencing range."

■ The district court in this case has considered, in some detail, the nature and circumstances of the offense in respect to what he found was a background of similar, serious drug activities during the preceding months. He looked into the "history and characteristics of the defendant." We are constrained, however, to consider the limitations of the guidelines in respect also to the plea agreement. There is nothing in the sentencing record as to whether defendant Silverman has, or has not, carried out his obligations under that plea, or whether the court took the plea obligations into account at all. The guidelines also set out in § 4A1.3, a policy statement dealing with the criminal history category, that "if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct ... the court may consider imposing a sentence departing from the otherwise applicable guideline range." *See also* § 4A1.3(a).

We are not prepared to rule whether the court's findings of relevant conduct with respect to aggregating quantity of cocaine, particularly the kilo of cocaine, were or were not clearly erroneous. We believe this case mandates consideration by the district court of the plea agreement wherein the United States Attorney not only did not charge Silverman in the indictment with drug offenses prior to February 14, 1988, but also agreed not to file "additional charges ... based on activities charged in the indictment or based on other illegal drug transactions ... occurring prior to the date of the Indictment." The effect of the findings by the district court may have been, at least indirectly, to take into ac-

count "additional charges," if not brought formally by the United States Attorney then by the probation office or the law enforcement agents involved in the sentencing process. The district judge should, at least, indicate whether he "accepted" the plea agreement and whether, upon consideration, the court is satisfied that the spirit and intention of that agreement was carried out in the sentence which it rendered. In that respect, the district court should consider whether the plea agreement in any way is overriden by its consideration of prior conduct, not the subject of any criminal charge, which occurred prior to the effective date of the guidelines.

We remand this case to the district court for consideration that is consistent with these observations, the plea agreement, to the extent it is applicable, and the "relevant conduct" as it relates to count one of the indictment. *See also United States v. Ykema*, 887 F.2d 697 (6th Cir.1989).

The dissenting judge has indicated that our remand for further consideration of the ramifications and effect of the plea agreement, if any are found to exist, somehow indicates that we have decided that the government's agreement not to file "additional charges" "insulates the conduct that would be the predicate for such charges from consideration by the court." That is not the intended inference to be drawn from our remand. We are mindful of *United States v. Smith*, 887 F.2d 104 (6th Cir.1989) and we effect the remand in light of that decision,[2] which considered the effect of dismissal of a count of an indictment and whether that conduct might be considered relevant conduct. We do not know, however, the terms and circumstances of the plea agreement in *Smith*.

3. **Role of the Defendant**

■ For guidance of the district court with respect to the remand for further consideration of "relevant conduct" and "plan or scheme" determinations, we consider defendant's challenge to the determi-

---

**2.** Upon remand, the district court should particularly take into account footnote 5 of the *Smith* decision.

nation of his role in the subject offense. Section 3B1.1 permits an increase in the offense level based on defendant's "role in the offense." The district court increased the offense level by three under § 3B1.1(b) as a "manager or supervisor."

This guideline requires that the "criminal activity involved five or more participants or was otherwise extensive." We have noted that the court's findings were correctly based on a preponderance of the evidence standard, but there was no indication of whether five or more participants were involved in this criminal activity.

The district court's findings in this regard are reviewed under the clearly erroneous standard. *United States v. Wilson,* 878 F.2d 921 (6th Cir.1989); *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989). The three level enhancement is therefore remanded for further necessary findings under § 3B1.1(b).

### 4. Withdrawal of guilty plea

■ The action of the district court in this respect is reviewed under an abuse of discretion standard. Defendant was aware of a maximum potential sentence of twenty years as set out in the plea agreement. The prosecution agreed, on the basis of reciprocal undertakings by the defendant, not to charge him with further offenses. Whether the circumstances of the plea agreement were taken into account by the court in respect to his exercise of discretion in this case is not altogether clear, as previously indicated. Upon the remand heretofore directed, the district court should indicate its reasons for rejecting the motion for withdrawal of the guilty plea.

We REMAND this case, as required by 18 U.S.C. § 3742(f)(1), for further sentencing determinations consistent herewith.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

I believe we have an adequate record before us and, on the basis of that record, I would affirm the sentence meted out by the district court. In this regard it is clear, to me at least, that the district judge did accept the plea agreement, otherwise he would not have ordered a presentence investigation report (PIR) to be prepared.

My principal disagreement with the majority opinion concerns the suggestion that an agreement by the government not to file "additional charges" insulates the conduct that would be the predicate for such charges from consideration by the court at the time of sentencing. Since this court is already on record as allowing the factual underpinnings of counts *dismissed* as part of a plea bargain to be considered by the court at sentencing,[1] I can see no principled reason why uncharged conduct may not be considered if it otherwise meets the requirements of the Guidelines. Since we have already swallowed the camel, it is no time to choke on the gnat.

Silverman argues that the court's reliance on the kilo transaction as "relevant conduct" for purposes of establishing the base offense level was inappropriate because that conduct occurred prior to the November 1987 effective date of the Guidelines; was not established by a jury finding or admission; was part of conduct dismissed or not pursued because of a court accepted plea agreement; and was not proved by competent evidence to be part of the same course of conduct, common scheme, or plan as the offense of conviction.

Resolution of Silverman's arguments requires review of pertinent provisions of the Guidelines. The introductory chapter of the Guidelines contains general principles governing their application. Section 1B1.2(a) instructs the sentencing court to determine the appropriate offense guideline, set forth in chapter two, that is most applicable to the offense of conviction. Section 1B1.2(b) further directs the sentencing court to determine the applicable guideline range in accordance with the Guidelines'

---

1. Silverman's reliance on a district court opinion relative to dismissed counts is misplaced since the case on which he relies was reversed. *United States v. Smith,* 887 F.2d 104 (6th Cir. 1989).

provisions on "Relevant Conduct."
§ 1B1.2(a), (b).

The Guidelines, as most recently amended in January 1988, describe relevant conduct in pertinent part as follows:

§ 1B1.3. *Relevant Conduct (Factors that Determine the Guideline Range)* The conduct that is relevant to determining the applicable guideline range includes that set forth below.

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, *all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction* . . . . .

(Emphasis added).

The Commentary to subsection (a)(2) provides:

Subsection (a)(2) provides for consideration of a broader range of conduct with respect to one class of offenses, primarily certain property, tax, fraud and drug offenses for which the guidelines depend substantially on quantity, than with respect to other offenses such as assault, robbery and burglary. The distinction is made on the basis of § 3D1.2(d), which provides for grouping together (*i.e.,* treating as a single count) all counts charging offenses of a type covered by this subsection. However, *the applica-*

*bility of subsection (a)(2) does not depend upon whether multiple counts are alleged.* Thus, in an embezzlement case, for example, embezzled funds that may not be specified in any count of conviction are nonetheless included in determining the offense level if they are part of the same course of conduct or part of the same scheme or plan as the count of conviction. *Similarly, in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.* On the other hand, in a robbery case in which the defendant robbed two banks, the amount of money taken in one robbery would *not* be taken into account in determining the guideline range for the other robbery, even if both robberies were part of a single course of conduct or the same scheme or plan. (This is true whether the defendant is convicted of one or both robberies.)

*Guidelines* at § 1.19 (emphasis added).

In this case, the district judge made a factual determination that the kilo transaction resulted in a debt to the defendant that was relevant to his motive and intent in the incident leading to his arrest. The court further determined that the kilo transaction constituted part of the same course of conduct, scheme, or plan as the offense of conviction. These factual determinations, though contested by Silverman, are based on evidence in the record before the court and reflect credibility determinations and a weighing of conflicting evidence by the court. I would conclude that the court's factual determinations are supported by the PIR and testimony by DEA Agent Robins, and are not clearly erroneous. Therefore, I decline to disturb those findings. Moreover, since the court's factual determination renders the kilo transaction "relevant conduct" within the meaning of the Guidelines, the court properly added the quantity of cocaine involved in the kilo transaction and the offense of conviction in determining the applicable sentencing

range. *See Guidelines* § 2D1.1 and Commentary at 2.40, 2.46.

Silverman contends that because the alleged kilo transaction occurred prior to the November 1987 effective date of the Guidelines, it is outside the purview of the district court in sentencing him on the February 1988 offense of conviction, which is properly subject to the Guidelines. As did the district court, I would reject this argument, noting that prior to implementation of the Guidelines a court was free to consider at sentencing a pattern of continuing drug activity by a defendant. There is no indication that Congress or the Sentencing Commission intended to preclude the court from considering such relevant conduct at sentencing.

Silverman also contends that the plea agreement precluded the court from considering the kilo transaction at sentencing. However, the plea agreement did not bind the court to a particular sentence or to limiting its consideration of relevant conduct at the time of sentencing. Rather, the government agreed and complied with its agreement not to file additional charges against Silverman for prior illegal drug transactions in the Southern District of Ohio about which he gave testimony or made statements in accordance with the plea agreement. The plea agreement also noted Silverman's acknowledgement that conviction on count one alone exposed him to as much as a twenty-year prison sentence. Accordingly, I find no merit to Silverman's argument that his sentence of seven years and three months, based, in part, on the quantity of cocaine involved in the kilo transaction, somehow violated the plea agreement.

Silverman next argues that the three-point enhancement of his sentence was improper because it was based on the purported relevant conduct described in the PIR rather than on his role in the offense of conviction.

Once a base offense level is determined under the Guidelines, the level may be subject to upward or downward adjustments. For example, in this case, a two-point downward adjustment was applied pursuant to section 3E1.1 of the Guidelines based on Silverman's acceptance of responsibility for his involvement in the count one charges to which he pleaded guilty. Upward adjustments are also authorized for such things as a defendant's role in a particular offense. *Guidelines* § 3B1.1(a), (b), (c). Notwithstanding Silverman's arguments to the contrary, or the fact that he did not originally purchase the 53 grams of cocaine for which he was ultimately arrested, the district court determined that Silverman played a major role in the offense. This determination was based on the fact that when the informant arrived to purchase the cocaine, Silverman took charge of the situation, instructed Mourning not to sell the cocaine because of the informant's prior debt, and exercised dominion and control over the money and the cocaine, which was subsequently found in his gym bag. Silverman himself admitted that he intended to go to Athens that day to sell the cocaine, and that he had been involved in drug trafficking in the past. The district court determined that Silverman was a "central, controlling and highly culpable actor" in the offense and not the causal bystander that Silverman sought to portray himself. I conclude that this factual determination is not clearly erroneous and that the sentencing court had authority, pursuant to section 3B1.1(b) of the Guidelines, to adjust the base level offense upward by three points.

Silverman's final argument is that due process requires that uncharged acts and conduct, not the subject of a conviction, which is utilized in sentence determinations, must be proved by a standard greater than a preponderance of the evidence; further that the evidence must be of sufficient quality to ensure its reliability and to protect a defendant's rights to confront his accuser. The Federal Rules of Evidence are not applicable to sentencing proceedings, Fed.R.Evid. 1101(d)(3), and so long as a defendant is provided an opportunity to explain or rebut uncorroborated hearsay evidence considered by the sentencing court, the court is free to consider such evidence. *United States v. York*, 830 F.2d 885, 893 (8th Cir.1987), *cert. denied*, 484

U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988). Moreover, this court has ruled, albeit prior to the enactment of the Guidelines, that information pertaining to a defendant's prior involvement in unprosecuted or unconvicted criminal activities is highly relevant to a court's sentencing decision. *United States v. Hill,* 688 F.2d 18, 20 (6th Cir.), *cert. denied,* 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982). The due process requirements for trial are distinct from those at sentencing where all that is required is that the information considered by the sentencing court have a sufficient indicia of reliability. *United States v. Marshall,* 519 F.Supp. 751, 754 (D.Wis. 1981), *aff'd,* 719 F.2d 887 (7th Cir.1983). As previously noted, the district court made a factual determination that the presentence and sentencing evidence of Silverman's uncharged conduct was sufficiently reliable to merit consideration as relevant conduct in determining the base offense level. No higher standard is required. Moreover, Silverman was given the right to meaningfully participate in his sentence determination. His objections to the presentence report were considered and responded to by the probation department, which resulted in a two-point reduction in his offense level for his admission of accountability. He also was given the opportunity but declined to testify at the sentencing hearing. Finally, he was able to cross-examine the DEA agent testifying about the two informants' and Mourning's statements concerning Silverman's drug-related activities. The DEA agent even offered to provide witnesses who would attest to the truth of the conduct alleged in the PIR. The fact that the judge found the government's evidence more persuasive than Silverman's does not taint the hearing with due process violations.

For the foregoing reasons, I would affirm.