30 F.3d 134
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dwayne Allen EDGE, Defendant-Appellant.
 No. 93-6079.
 United States Court of Appeals, Sixth Circuit.
 July 22, 1994.
 
 Before: JONES, Circuit Judge; WELLFORD, Senior Circuit Judge; ENSLEN,* District Judge
 PER CURIAM.
 
 
 1
 This appeal from sentencing after a drug conviction is before us for the second time. Dwayne Allen Edge's ("Edge") first appeal from the sentence imposed upon him resulted in this court's remand for resentencing. Edge now appeals alleged errors taking place during resentencing after the remand.
 
 Edge I
 
 2
 In November 1990, Edge and Steven Mikels, an undercover officer with a drug task force in Davidson County, Tennessee, negotiated a drug deal whereby Edge would deliver to Mikels 1000 marijuana "plants" and $13,000.00 in exchange for 1000 grams of cocaine. United States v. Edge, 989 F.2d 871, 873 (6th Cir.1993). On February 28, 1991, Edge delivered the marijuana in ten trays, each containing approximately 100 marijuana cuttings, saturated with a rooting hormone. Id. Edge was arrested and indicted in the United States District Court for the Middle District of Tennessee on one count of knowingly and intentionally distributing marijuana ("Count One") and one count of knowingly and intentionally possessing with the intent to distribute cocaine ("Count Two") in violation of 21 U.S.C. Sec. 841(a)(1).[1]
 
 
 3
 Edge pled guilty to Count One, and the court dismissed Count Two on the government's motion. A presentence report was prepared, noting that Edge's conviction involved more than 1000 but less than 3000 kilograms of marijuana. Id. at 873-74.
 
 
 4
 The district court conducted a sentencing hearing, at which the government introduced evidence on the issue of whether the marijuana cuttings in question were "plants" for federal sentencing purposes. Edge testified that, the night before the exchange, he cut about 700 to 800 growing tips of mature marijuana plants about one to two inches tall and placed them in a growing medium that was saturated with a rooting hormone. Id. Edge cut the remainder of the clones sometime previous to that night. Id. Edge testified that a cutting takes about three to six weeks to develop a root. Id.
 
 
 5
 The government presented an expert witness in the field of botany, Dr. Robert Kral of Vanderbilt University to testify to what extent the cuttings were plants. Id. According to Dr. Kral, a plant must have: "the process of photosynthesis," "some kind of multicellular sex organs formed by [it]," and "a circulatory system." Id. Dr. Kral testified that "a cutting is a plant." Id.
 
 
 6
 On cross-examination, Dr. Kral stated that he "wouldn't have any problem" with the following statement: "A cutting becomes a plant when it develops a root system sufficient to allow the cutting to maintain open stomas ... so it can exchange gas and provide for energy requirements." Id. Dr. Kral observed several of the marijuana cuttings, noting "a swollen area that looks like some [callus tissue] is forming there and that would be attributable to the beginning of a callus formation which roots will come," on one cutting and "[a]ctual roots" on three other cuttings. Id. at 875 (alterations in original).
 
 
 7
 The district court determined that Edge was accountable for 1,010 plants, which translated into 1,000 kilograms of marijuana for guideline purposes. Id.; see U.S.S.G. Sec. 2D1.1(c)(n.*). The district court did not take into account the cocaine involved in the exchange in its sentencing computations, although the presentence report recommended considering the cocaine as relevant conduct.[2] Id. The district court's calculations yielded a base offense level of thirty-two.[3] Id. The district court gave Edge a two-level credit for acceptance of responsibility and sentenced Edge at an offense level of thirty to 108 months followed by five years supervised release. Id.
 
 
 8
 Edge appealed, arguing among other things that the government did not meet its burden of proving that he distributed over 1000 marijuana "plants" because the majority of the confiscated marijuana cuttings in this case were not "plants" for federal sentencing purposes. Id. at 876. We vacated the sentence imposed and remanded the case for further consideration and for a disposition consistent with the opinion.[4] Specifically, the Edge I court rejected Dr. Kral's broad definition of plant, opting instead for more practical definition: "a cutting with some readily observable evidence of root formation." Id. at 877.
 
 
 9
 We noted that the district court may have employed an overbroad definition of "plant" in determining Edge to be accountable for over 1000 marijuana "plants." Specifically, we observed that at least two of the samples shown to Dr. Kral had no readily observable evidence of root formation.[5] Id. We concluded that "if it has a reasonable root system--it will be considered a 'plant'." Id. at 878. We indicated that the number of "plants" Edge is responsible for would be less than the total amount seized. Id. at 879.
 
 Edge II
 
 10
 On remand, the government stipulated that the marijuana seized was not available for examination by the court. (This issue was belatedly raised by Edge in the first appeal as a due process violation.) The government did not present any additional evidence, relying instead on the record in the case, which included a number of photographs. The government argued that the record supported sentencing based on at least 600 kilograms of marijuana.[6]
 
 
 11
 Edge informed the court that a federal grand jury in the Middle District of Tennessee indicted Officer Mikels on felony charges relating to his activities with the drug task force. Edge argued that the scope of the remand was narrow: "how many plants the government has proven or can in this hearing prove Mr. Edge unlawfully distributed on February 28, 1991." He objects to the district court's consideration of the cocaine after the remand.
 
 
 12
 The district court concluded that based on Edge's testimony and the record before it a minimum of 210 of the marijuana specimens should be deemed plants.[7] Accordingly, the plants were treated as equivalent to 210 kilograms of marijuana. The court also found that the 1079 grams of cocaine that was to be exchanged for the marijuana constituted relevant conduct under Sec. 181.3(1). This converted to an equivalent of 215.8 kilograms of marijuana. The district court, therefore, held Edge responsible for a total of 425 kilograms of marijuana at an offense level of 28 with a two-level credit for acceptance of responsibility and sentenced him to seventy (70) months, and four years of supervised release. Edge argues that the district court's inclusion of 1079 grams of cocaine as relevant conduct exceeded the scope of this court's remand, and the district court's finding of his involvement in 210 marijuana plants was clearly erroneous.
 
 
 13
 The government responds that the district court had discretion under the guidelines to consider all relevant conduct. In the alternative, the government argues that the district court did not exceed the scope of the remand because resentencing is to be handled de novo. In light of our determination concerning the quantity of marijuana for which Edge is held responsible, we choose not to consider the quantity of cocaine in our sentencing conclusion. According to the sentencing guidelines, U.S.S.G. Sec. 2D1.1(c)(9), amounts between 100 and 400 kilograms of marijuana warrant a base level of 26. The district court sentenced Edge based on a base offense level of 28 (less 2 points for acceptance of responsibility), taking into account the cocaine for resentencing purposes on remand. We noted in our prior decision that "[t]he [district] court did not consider the cocaine involved in the exchange in its sentencing computations."
 
 
 14
 [I]n determining whether a trial court is duty bound to rethink an issue foregone in an earlier appeal, the court "must implement both the letter and spirit of the [previous] mandate, taking into account the appellate court's opinion and the circumstances it embraces." United States v. Kikumura, 947 F.2d 72, 76 (3d Cir.1991) (citation and internal quotation marks omitted).
 
 
 15
 United States v. Bell, 988 F.2d 247, 250 (1st Cir.1993). We do not decide the complex issue as to whether the district court, or this court on appeal, may properly revisit or "rethink an issue foregone in an earlier appeal." See also United States v. Connell, 6 F.3d 27 (1st Cir.1993).
 
 
 16
 The district court found, based upon an examination of photographs and the entire record, including Edge's statements regarding circumstances of cutting the plants, that there were a minimum of 210 marijuana plants to be taken into account. The district court's findings of fact regarding the number of plants involved are reviewed under a clearly erroneous standard. United States v. Rodriguez, 896 F.2d 1031, 1034 (6th Cir.1990).
 
 
 17
 Edge argues that the above finding is clearly erroneous. First, he argues that the government failed to carry its burden of proof in establishing how many "plants" were distributed. See United States v. Silverman, 889 F.2d 1531 (6th Cir.1989). Edge argues further that the government only met this burden to the extent that five cuttings were actually examined and were found to be plants, taking into account the stipulation that the "cuttings" are no longer available for examination and were never individually examined.
 
 
 18
 We concede that the record is unclear as to the precise number of marijuana "plants" involved, as previously defined. After carefully reviewing the record, we are satisfied that Edge distributed a minimum of one hundred (100) marijuana plants in violation of 21 U.S.C. Sec. 841(a)(1).[8]
 
 
 19
 Accordingly, we now VACATE the district court's sentence based on a finding of 210 plants being involved, and in the interest of justice, we sentence Edge to the statutory minimum of sixty (60) months to be followed by four (4) years of supervised release. 21 U.S.C. Sec. 841(b)(1)(B)(vii).[9] We impose the mandatory minimum sentence in this case based upon the lack of clarity in the record and the uncertainties as to the nature of the "plants" involved.
 
 
 
 *
 HONORABLE RICHARD A. ENSLEN, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Section 841(a)(1) provides as follows:
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.
 21 U.S.C. Sec. 841(a)(1) (1981).
 
 
 [2]
 In our prior opinion, p. 875, we observed, without further comment, that "[t]he court did not consider the cocaine involved in the exchange in its sentencing computations."
 
 
 [3]
 With a criminal history category of II, the sentencing guidelines imprisonment range was determined to be 108-135 months. Id
 
 
 [4]
 We stated that "[t]he district court should make a specific finding ... explaining its determination of the number of marijuana 'plants' according to the test we have set forth...." Id. at 879
 
 
 [5]
 The court did not credit Dr. Kral's finding that a photograph of the confiscated 'plants' contained algae, which Dr. Kral stated meant that the plants were in the rooting agent a fair length of time
 
 
 [6]
 At resentencing, the government argued that because Dr. Kral testified that 60% of the in court samples were plants, then the court should hold Edge accountable for 60% of the total cutting confiscated or 600 kilograms. Edge, however, argued he should be held responsible for the few plants offered at trial, and that sentencing should be based on six plants. The district court rejected both arguments
 
 
 [7]
 The district court stated:
 [C]onsidering the testimony of Mr. Edge himself at the previous sentencing hearing in which he on page 49 estimated that he had cut between seven and eight hundred the night before and the remainder of the thousand and ten, somewhere between 210 and 310 had been placed in the rooting medium Rootone, a growing medium, at an earlier time, the Court finds that at a minimum there were 210 plants which results in a conversion of 210 kilograms of marijuana.
 The Court further finds the relevant conduct, there were a thousand 79 grams of cocaine which converts to 215 point eight kilograms of marijuana for a total of 425 kilograms of marijuana. At the low end of the level 28--400 to 700 kilos--level 28; getting two points for acceptance of responsibility results in a sentencing range--with a five-year mandatory minimum and a sentencing range with a criminal history category of two, 70 to 87 months.
 J/A at 80-82. The district court then sentenced Edge to 70 months.
 
 
 [8]
 [We do not hold the] defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate. Thus when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution
 United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.1990), cert. denied, 498 U.S. 990 (1990).
 
 
 [9]
 In the 1988 Amendments, Congress increased the threshold requirement for a mandatory sentence of five years from fifty (50) plants to one hundred (100) plants. See 21 U.S.C. Sec. 841(b)(1)(B)(vii) (Supp.1994) (Historical and Statutory Notes)