**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles V. USHERY (91–5716) and
Benjamin R. Burton (91–5715),
Defendants–Appellants.**

Nos. 91–5715, 91–5716.

United States Court of Appeals,
Sixth Circuit.

Argued April 3, 1992.

Decided June 18, 1992.

Jacquelyn A. Jess, Asst. U.S. Atty. (argued and briefed), Office of U.S. Atty., Covington, Ky., for plaintiff-appellee.

Robert B. Cetrulo (argued and briefed), Ware, Bryson, West & Bartlett, Edgewood, Ky., for defendant-appellant.

Before MILBURN and SUHRHEINRICH, Circuit Judges, and COHN *, District Judge.

SUHRHEINRICH, Circuit Judge.

Benjamin Ross Burton and Charles Vincent Ushery were charged with conspiracy to possess with intent to distribute cocaine (Count 1) and possession with intent to distribute cocaine (Count 2). Both filed motions to suppress evidence that they claimed was obtained in violation of their constitutional rights. After the district court denied both motions, Burton entered a conditional guilty plea to Count 2, allowing him to appeal the denial of his motion to suppress. Ushery proceeded to trial and was convicted on both counts. Ushery now raises several challenges to his conviction and sentence. We affirm the denial of

both motions to suppress. We also affirm Ushery's conviction and sentence.

I.

In April 1990, Officer David Bunning of the Cincinnati/Northern Kentucky International Airport Police Department received a tip on April 8, 1990 that a round trip ticket to San Francisco, California had just been purchased in the name of Vincent Charles Ushery. The ticket was purchased ten minutes before departure by a man with no identification or luggage, the fare, which exceeded $1,000, was paid in cash, and the return flight was due to depart San Francisco less than twenty-four hours after arrival. Bunning contacted the Cincinnati Police Department and was informed that the subject was probably Charles Vincent Ushery, who was suspected of narcotics trafficking. Bunning contacted the San Francisco International Airport Police Department and relayed a description of Ushery. Ushery was observed exiting the Cincinnati flight and meeting three other men, including Terryl Rucker and Benjamin Ross Burton. The four left the airport together. While on the ground, they developed and executed a plan to obtain two kilograms of cocaine.

Meanwhile, Ushery missed his scheduled flight to Cincinnati. The three decided to take the next flight. Ushery paid the fare on Rucker's ticket, which was issued under the name Frank Hicks. Burton also purchased his one-way ticket to Cincinnati with cash obtained from Ushery. The ticket was issued in the name Benjamin Ross. Ushery, Rucker, and Burton did not approach one another in the airport. However, San Francisco and California police officers stationed at the airport observed the three making eye contact and nodding to one another while awaiting their flight. After the plane was boarded, the San Francisco airport police contacted Officer Bunning to alert him of their observations, such as the maintenance of eye contact, and of the impending return.

---

\* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

Agent James McKiernan of the DEA joined Officer Bunning at the Cincinnati Airport. They observed Ushery, Rucker, and Burton deplane and followed them. Ushery carried no luggage, Rucker carried a dark bag, and Burton carried a maroon suit bag. The baggage had been described to Bunning by the San Francisco Airport police.

Needing ground transportation, Burton asked a dispatcher to send a cab. However, agent McKiernan subsequently instructed the dispatcher to delay it. Burton and Rucker waited at the curb and were joined by Ushery. Ushery and Rucker left Burton and began to walk down the street with McKiernan and Bunning following. McKiernan called out to Rucker and Ushery and then each officer identified himself. The officers explained that they wanted to ask some questions but Rucker and Ushery were not under arrest. Rucker and Ushery each assented. McKiernan spoke to Rucker while Bunning spoke with Ushery.

At Bunning's request, Ushery produced his original round trip ticket bearing the name Vincent Charles Ushery and maintained that he had traveled to visit Benjamin Ross's aunt. Ushery then identified Burton, who was still waiting for his cab, as Ross. Ushery then consented to a pat down search, which revealed several thousand dollars in cash. Bunning again asked Ushery why he had gone to San Francisco, and Ushery stated that it was to pick up Ross's children (there were no children with Ushery, Rucker, or Burton).

Simultaneously, Rucker produced his plane ticket for McKiernan. His Indianapolis continuation flight was due to depart in three to six minutes. He explained his absence from the terminal by claiming he was there to meet Ushery's girlfriend. Rucker consented to a search of his bag. McKiernan found a wallet containing Burton's driver's license. Rucker then identified Burton, still waiting for his cab, to McKiernan.

Bunning approached Burton, identified himself, and asked to speak with him. Burton consented. Burton initially denied

knowing Ushery then stated that they had met on the plane. During the conversation, Burton moved about in an attempt to block Bunning's view of his bag, which he had placed on a pile of debris next to a garbage can. Upon Bunning's request, Burton consented to a search of the bag. Burton twice attempted to walk away but on both occasions was instructed to return and witness the search. The search revealed a one kilogram brick of cocaine. Bunning placed Burton under arrest, McKiernan read Ushery and Rucker their *Miranda* [1] rights, and all three were taken to the Airport Police Department. At the police department, Rucker turned over the kilogram of cocaine he had been carrying.

## II.

### A.

■ There are three categories of interaction between police and citizens: consensual encounters, temporary detentions (or *Terry* stops), and arrests. The Fourth Amendment applies only to the latter two. Thus, a police officer must have a reasonable suspicion to conduct a temporary detention or probable cause to conclude an arrest, while no objective justification is required to initiate a consensual encounter. *See United States v. Flowers*, 909 F.2d 145, 147 (6th Cir.1990).

■ Burton describes his encounter with the police as nonconsensual and further contends that there were no grounds for reasonable suspicion. The test for whether an encounter with the police constitutes temporary detention is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

require some particularized and objective justification." *Id.*

From the time Burton was approached until the search began, the encounter with the police was entirely consensual. Officer Bunning approached Burton, identified himself as a police officer, asked Burton several questions (after obtaining consent), and then asked for permission to search his bag. This would not render reasonable a belief that one is not free to leave. *See United States v. Rose*, 889 F.2d 1490, 1493 (6th Cir.1989). Burton points to the fact that the police instructed the dispatcher to delay his taxi. However, Burton was not made aware of this before giving his consent. As a result, he could not have harbored the impression that he was not free to leave or to refuse to answer any questions.

▮ What begins as a consensual encounter may be transformed into a seizure that implicates the Fourth Amendment, such as a temporary detention. *I.N.S. v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984). As Officer Bunning searched Burton's bag, Burton twice attempted to walk away. On both occasions, Officer Bunning directed Burton to remain and witness the search, thereby transforming the incident into a temporary detention.

However, the District Court found that Officer Bunning had reasonable suspicion on which to base this temporary detention. Reasonable suspicion requires that "[t]he officer ... be able to articulate something more than an 'inchoate and unparticularized "hunch."' The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citations omitted). The determination of whether a reasonable suspicion exists "is to be based upon all the circumstances" surrounding the stop, *United States v. Williams*, 754 F.2d 672, 674 (6th Cir.1985), and is a less demanding requirement than probable cause. *Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585.

Officer Bunning had ample support for his suspicion. Burton was associating with Ushery, who was under DEA investigation, and returned with him from San Francisco, where Ushery was thought to have drug sources. Ushery purchased in cash a round trip ticket having a return flight in less than twenty-four hours. Ushery had no luggage, and Burton and Rucker had only carry-on luggage. Rucker was carrying Burton's identification. Burton denied knowing Ushery, but Ushery had stated that he was traveling with Burton.

When returning from San Francisco, Ushery, Rucker, and Burton acted suspiciously. They studiously avoided associating with one another yet maintained eye contact and acknowledged one another by nodding. In addition, Burton tried to disguise his bag amongst a pile of debris and shifted about in an apparent attempt to conceal the bag from Officer Bunning's view. Finally, Burton traveled from a source city (San Francisco) to a distribution city (Cincinnati). All of this conduct was known to Officer Bunning and provides ample support for his reasonable suspicion. *See United States v. Taylor*, 956 F.2d 572 (6th Cir.1992) (en banc); *Williams*, 754 F.2d at 674.

### B.

▮ Ushery claims that he was arrested without probable cause. Probable cause exists where the facts and circumstances of an arrest are sufficient "to warrant a reasonable and prudent man to believe that a suspect has committed or was committing a criminal offense." *United States v. Steele*, 727 F.2d 580, 588 (6th Cir.), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984).

From the time the authorities first approached Ushery until Officer Bunning discovered cocaine in Burton's bag, the encounter was consensual as to Ushery. When the cocaine was discovered, Agent McKiernan read Ushery his *Miranda* rights and placed him under arrest. At the time of the arrest, Agent McKiernan knew that Ushery had made a cash purchase of a plane ticket with a scheduled return in less

than twenty-four hours; that upon arriving in San Francisco, Ushery was met by Rucker ·and Burton; that Ushery gave conflicting and implausible reasons for having gone to San Francisco; and that a kilogram of cocaine had been found in the luggage of Burton, with whom Ushery admitted he was traveling. These factors comprise a reasonable ground for the belief that Ushery was committing, at· the very least, the crime of conspiracy to possess with intent to distribute cocaine. *See Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988).

### III.

Rucker testified that he, Burton, and Ushery had planned that Ushery would not carry any cocaine from San Francisco to Cincinnati because "Ushery had a record." When asked what he meant by a record, Rucker responded, "He was a convicted felon." Ushery objected and moved for a mistrial. The court sustained the objection, holding the testimony prejudicial, and took a recess. Upon reconvening, the court added as grounds for sustaining the objection that the testimony violated Federal Rule of Evidence 404(b). However, the court denied the motion for a mistrial and instead admonished the jury to disregard the statement.

 The district court's determination that the testimony was inadmissible under Rule 404(b) is a conclusion of law and therefore subject to de novo review. *See United States v. Levy,* 904 F.2d 1026, 1029 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991). Rule 404(b) only bars evidence of "prior bad acts," such as a criminal conviction, that are offered to show criminal disposition or propensity. If the evidence has an independent purpose, its admission is not prohibited by Rule 404(b). *United States v. Blakeney,* 942 F.2d 1001, 1017–18 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992). In this case the evidence was offered to show the plan of co-conspirators Rucker, Burton, and Ushery and to explain why Ushery was not carrying cocaine. Therefore, the district court erred in ruling that Rule 404(b) barred Rucker's testimony. *See id.* at 1017–21.

 Having passed Rule 404(b), the district court must determine whether the probative value of the evidence outweighs its potential prejudicial impact under Rule 403. *Blakeney,* 942 F.2d at 1018. The district court's alternative ground for its ruling was that the probative value did not outweigh the potential for prejudice. We will reverse such a finding only for abuse of discretion. *Id.* The district court observed the trial firsthand, placing it in the best position to assess the impact of the testimony within the context of the proceedings. As such, we cannot say that the court abused its discretion, even though the record might have supported a different·conclusion. ·

 Ushery argues that the court's curative instruction failed to alleviate the potential for prejudice and that a mistrial should have been granted instead. The decision to give a curative instruction in lieu of a mistrial lies within the sound discretion of the district court. *See, e.g., United States v. Atisha,* 804 F.2d 920, 926 (6th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). The challenged portion of Rucker's testimony constituted "but a small portion of the total" evidence against Ushery. *United States v. Bowers,* 739 F.2d 1050, 1055 (6th Cir.), *cert. denied,* 469 U.S. 861, 105 S.Ct. 195, 83 L.Ed.2d 128 (1984). As a result, any prejudice occasioned by the passing reference to his criminal record was cured by the court's instruction.

### IV.

Ushery was convicted of conspiracy to possess with intent to distribute cocaine (Count 1) and possession with intent to distribute cocaine (Count 2). He claims that there was insufficient evidence to support these convictions.

 Rucker testified against Ushery at trial. This testimony established that Rucker and Burton went to the San Francisco Airport to meet Ushery, who had come to town to procure narcotics. After

meeting, all three returned to a safe house where they discussed a drug transaction. They decided to steal rather than purchase two kilograms of cocaine. All three participated in the discussion of this plan and all three agreed to it. Rucker, Burton, and Ushery then met with their supplier. Ushery and the supplier left together to obtain a sample of cocaine. After returning, all four went to the supplier's apartment, where Rucker and Ushery took the cocaine at gunpoint. The three conspirators fled to Rucker's apartment where they made plans to transport the cocaine to Cincinnati. It was agreed that Ushery would not carry any cocaine. Ushery gave Rucker plane fare to Cincinnati to enable Rucker to transport the cocaine. Rucker also testified that the plan called for Ushery and Burton to distribute the cocaine upon their return to Cincinnati.

The testimony plainly establishes a conspiracy. Ushery agreed to the plan to procure the cocaine and was an active participant in the execution of that plan. He also agreed to the plan to transport the cocaine to Cincinnati, where Ushery then intended to distribute it. He actively participated in this leg of the conspiracy by, inter alia, financing Rucker's ticket.

■ As to the possession with intent to distribute conviction, Rucker expressly testified that Ushery intended to distribute the cocaine in Cincinnati. The only remaining issue, then, is whether he knowingly possessed the cocaine. While Ushery did not actually possess the cocaine, this requirement is satisfied if he constructively possessed the cocaine. Constructive possession exists where one exercises ownership, dominion, or control over an object or the premises on which it is concealed. *United States v. White*, 932 F.2d 588, 589 (6th Cir.1991) (per curiam); *United States v. Williams*, 503 F.2d 50, 52 (6th Cir.1974).

Rucker was carrying the cocaine on Ushery's behalf. This is shown by the fact that Ushery paid for Rucker's plane ticket and that Ushery, not Rucker, was to distribute the cocaine. This bespeaks a degree of control over and proprietary interest in the cocaine sufficient to support a finding of constructive possession. Therefore, a rational trier of fact could have found that Ushery knowingly possessed with intent to distribute cocaine.

## V.

### A.

■ At Ushery's sentencing, F.B.I. agent Cuthbertson testified regarding relevant conduct on the basis of interviews he had conducted with three informants: Eugene Peterson, Jairo Sierra, and an unnamed source. Cuthbertson's testimony established that, in late summer 1989, Peterson hired Ushery and Reggie Myers (Ushery's cousin) to be bodyguards in Peterson's cocaine distribution network. The three traveled to St. Louis where they obtained five kilograms of cocaine from Sierra on consignment. Peterson and Sierra independently corroborated this transaction. Peterson was arrested shortly thereafter.

Myers and Ushery then took over Peterson's operation and purchased additional cocaine from Sierra. Sierra set the amount at five kilograms while the unnamed source, who delivered the cocaine to Myers and Ushery, claimed it was only three kilograms. The unnamed source recalled "four to five" visits to St. Louis by Myers and Ushery over the "next month or so." On each visit they procured three kilograms of cocaine. The unnamed source's recollection is uncorroborated. Finally, in December 1989, Sierra sold three kilograms to Ushery, who had fallen out with Myers. This was corroborated by Sierra and the unnamed source.

The district court considered this relevant conduct under U.S.S.G. § 1B1.3 and factored it into its determination of Ushery's offense level. The court resolved discrepancies between the informants' recollections by adopting the version most favorable to Ushery. Hence, the district court found the second transaction between Sierra and Ushery to have involved only three kilograms of cocaine. In addition, the district court found that only four visits took place during the following "month or

so." As a result, Ushery possessed 23 kilograms of cocaine between late summer and December 1989. When this relevant conduct was added to that for which he was convicted, Ushery's offense level rose from twenty-eight to thirty-four and the sentence range from 140–175 months to 262–327 months.

Ushery contends that this enhancement constitutes clear error, as it was not based on reliable evidence. The district court specifically found Cuthbertson's testimony credible, and this clearly implies a finding that his informants were credible. There is no evidence that Cuthbertson or his informants suffered from any faultiness of memory or that their statements were mere guesses. Although there were some discrepancies, most of the informants' statements corroborated one another. Furthermore, any residual inconsistencies were resolved in Ushery's favor. Thus, we cannot find the district court's ruling clearly erroneous. *See United States v. Warner,* 955 F.2d 441, 449–52 (6th Cir.1992).

Ushery next argues that, even if true, Cutherbertson's testimony does not establish relevant conduct, as the St. Louis transactions are unrelated to the conspiracy he engaged in with Rucker and Burton. However, "the entire quantity of cocaine attributable to a distribution enterprise must be used to establish the base offense level...." *United States v. Miller,* 910 F.2d 1321, 1327 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). While the source of the cocaine referred to in the indictment was not Ushery's St. Louis source, all of this cocaine was procured in furtherance of the same purpose or scheme; that is, to be distributed in Cincinnati by Ushery or his confederates. Therefore, Ushery's St. Louis purchases constitute relevant conduct under U.S.S.G. § 1B1.3. *See Miller,* 910 F.2d at 1326–28 (cocaine sold over twenty month period preceding the time of offense charged in the indictment is relevant conduct). Certainly, the fact that this

conduct was not encompassed within the indictment does not preclude it from being considered relevant conduct. *See, e.g., United States v. Funt,* 896 F.2d 1288 (11th Cir.1990); *cf. United States v. Moreno,* 933 F.2d 362, 374 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991).[2] Since the St. Louis purchases constitute relevant conduct, the district court was justified in increasing Ushery's offense level from twenty-eight to thirty-four.

The district court then assessed an additional two points to Ushery's offense level for his "role in the offense" bringing his offense level to thirty-six. By entering into partnership with Myers to run Peterson's drug enterprise, Ushery became an organizer and leader of that criminal operation. Since Ushery's St. Louis activities constitute relevant conduct under section 1B1.3, his leadership role in that enterprise mandated a two point role in the offense enhancement under U.S.S.G. § 3B1.1. *See* U.S.S.G. § 1B1.1 application note 1($l$) (defining "offense" as "the offense of conviction and all relevant conduct under § 1B1.3").

Ushery's sentencing hearing was conducted by a magistrate, and his report and recommendation was adopted by the district judge. Incarceration is a strong medicine that must be prescribed carefully. The guidelines have brought much needed precision and certainty to sentencing. Nevertheless, sentencing remains a highly subjective and complicated endeavor that often requires a judge to assess involved testimony and make difficult credibility determinations. We note that it is inappropriate for a district judge to sycophantically sustain a sentencing recommendation. *See Banks v. United States,* 614 F.2d 95, 99 (6th Cir.1980). However, we do not have occasion to decide whether a district judge may ever delegate the responsibility for conducting a sentencing hearing to a magistrate, as Ushery has failed to preserve

---

**2.** At oral argument, Ushery complained that the presentence report failed to expressly relate the St. Louis conduct to that charged in the indictment. Even if this were an appropriate objection, which we doubt, Ushery failed to raise it below or in his appellate brief. Therefore, we do not consider this argument. *See United States v. Fry,* 831 F.2d 664, 668 (6th Cir.1987).

this issue for appeal. *See United States v. Cardinal,* 782 F.2d 34, 36 (6th Cir.1986).

### B.

■ Ushery also raises a coterie of constitutional contentions regarding his sentence. He argues that the use of agent Cuthbertson's hearsay testimony to prove relevant conduct violated his Sixth Amendment right of confrontation. In support, Ushery cites *United States v. Silverman,* 945 F.2d 1337 (6th Cir.1991). However, the ruling in *Silverman* was vacated when we granted the government's petition to rehear the case en banc. *See United States v. Silverman,* No. 90–3205, 1991 WL 179608, 1991 U.S.App. Lexis 28543 (6th Cir. Dec. 4, 1991). The case has been reargued and disposition is currently pending. Until the en banc court issues its opinion, we will follow the majority of circuits in rejecting the application of the Sixth Amendment's confrontation clause to sentencing proceedings. *See, e.g., United States v. Kikumara,* 918 F.2d 1084 (3d Cir.1990); *United States v. Beaulieu,* 893 F.2d 1177 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

■ Ushery next asserts that the use of hearsay violated his due process rights. It has long been established that consideration of hearsay evidence at the sentencing stage does not violate due process. *See, e.g., United States v. Garcia,* 725 F.2d 52 (6th Cir.1984) (citing *Williams v. New York,* 337 U.S. 241, 244, 69 S.Ct. 1079, 1081, 93 L.Ed. 1337 (1949)). This precedent cannot be validly distinguished, and Ushery makes no attempt to do so.

■ Finally, the government need only prove relevant conduct by a preponderance of the evidence. U.S.S.G. § 6A1.3, Commentary. Ushery claims that this violates the Eighth Amendment requirement that all elements of a crime be proven beyond a reasonable doubt. We rejected this argument in *United States v. Silverman,* 889 F.2d 1531, 1535 (6th Cir.1989), *after remand,* 945 F.2d 1337 (6th Cir.1991), *reh'g granted,* (6th Cir. Dec. 4, 1991). We decline Ushery's invitation to overrule *Silver-* *man I* because this standard has long applied to sentencing proceedings and the constitutional analysis is not altered by the adoption of the Sentencing Guidelines. *See United States v. Sciarrino,* 884 F.2d 95, 97 (3d Cir.), *cert. denied,* 493 U.S. 997, 110 S.Ct. 553, 107 L.Ed.2d 549 (1989).

For the foregoing reasons, we affirm the convictions of Benjamin Burton and Charles Ushery in all respects. We also affirm Ushery's sentence.

AVERN COHN, District Judge, concurring and dissenting.

I agree with everything Judge Suhrheinrich has written except with regard to his specific findings in Part V. Whether or not allowed by statute, I too believe it poor policy to relegate an evidentiary hearing in a dispute over the applicable guideline score to a magistrate judge for a report and recommendation. In this case the record reflects a good deal of confusion over precisely what was at issue with regard to Ushery's relevant conduct and his role in the offenses of conviction. The evidence before the magistrate judge came only from Agent Cuthbertson. There was nothing one way or the other in his testimony to support a finding that Peterson and Sierra's description of Ushery's involvement in the St. Louis enterprise was credible. Ushery denied any involvement. The magistrate judge's report and recommendation ignored Ushery's denial in stating that "Ushery has come forward with no evidence to contradict the government witnesses." If Ushery was an organizer, it was of an enterprise unrelated to the enterprise involved in the offenses of conviction. All of this, however, is really of little moment. If the applicable guideline range is computed without regard to the St. Louis enterprise and Ushery's role as an organizer, because he is a career criminal his sentence must be not less than 262 months or more than 337 months. As computed by the trial judge the range is 360 months to life. In all events the trial judge could not go below 262 months. This means with a best case scenario Ushery will likely be over 60 before he is released. At that age

there is little chance he will be any greater danger to society than at 65.