12 F.3d 215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald JONES, Defendant-Appellant.
 No. 92-6675.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1993.
 
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant Ronald Jones ("Jones") appeals his conviction by jury trial for possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 846. He claims that, as a matter of law, his conviction was derived from outrageous conduct and entrapment by law enforcement officers, and that the court below erred in not granting his motion to dismiss at the conclusion of the proof. He also contends that the court below erred in limiting his cross-examination of a government witness and in determining his sentencing level.
 
 
 2
 * Jones and Malachi Woods ("Mel") arranged to meet at a Days Inn Motel in Memphis on February 20, 1991, so that Jones could purchase six kilograms of cocaine. Mel was working as an informant for DEA Special Agent James Akagi, who was videotaping the transaction in the next room.
 
 
 3
 On the evening of the arrest, U.S. Customs Service Agent Stephen McCormick, who was in the room with Akagi, observed an LTD slowly circle the Days Inn parking lot and then return to park directly in front of the room where the deal was to take place. Shortly thereafter a Volvo parked next to the LTD. Jones got out of the Volvo, spoke to the occupants of the LTD, and then retrieved a package from the trunk of the Volvo.[1] He entered the room where Mel was waiting and exchanged $69,000 for six kilograms of cocaine. He placed the cocaine in a bag and sealed it with duct tape he had brought for that purpose. Jones was then arrested by the officers who had been in the adjacent room.
 
 
 4
 The background to this arrest arises from the drug trafficking activities of Mel and his cousin, Robert Woods ("Big Man"). After Mel and Big Man had been arrested in 1990 in California on cocaine possession charges, they began to cooperate with Akagi in the hope of reducing the very serious federal charges they faced. Big Man claimed to have moved a great quantity of cocaine to the Memphis area through Jones, with Mel acting as the courier for several of these deals. Big Man and Mel agreed to set up a "buy" in Memphis that would help the federal officers develop a case against Jones.
 
 
 5
 Big Man initiated contact with Jones in Memphis in December 1990. No deal occurred at that time. He returned in February 1991 in order to set up a deal for six kilograms of cocaine. Mel was to handle the actual delivery. Using the method of operation that had been worked out for such deals in the past, Mel arrived at the Days Inn and called Jones. Jones got the number of the motel room and returned the call shortly thereafter. In a conversation that was recorded and later played for the jury, Jones told Mel that one person had backed out of the deal and that he was thus short of cash. Mel told Jones to come anyway, that Jones could make up the money owed later.
 
 
 6
 A short time later that evening, the LTD and Volvo arrived at the motel parking lot, as described above. The ensuing events were observed by the government officers and recorded on videotape.
 
 
 7
 Jones claims that he was badgered into making this deal after repeated contacts initiated by the Woods cousins, which eventually overbore his will. He asserts that he had no dealings with drugs prior to his arrest on February 20, and that on that night he had no idea how to unload the drugs he was purchasing. He further maintains that he obtained the cash for the deal from three sources: (1) personal savings from jobs he had held in the past, (2) money borrowed from his mother, and (3) $40,000 that he unexpectedly found hidden inside a wall in his deceased grandfather's house. Jones' family members testified that they had observed Jones with Mel and Big Man on one or two occasions and that Jones had received phone calls from the two men. The testimony did not, however, indicate a pattern of harassment that might overbear Jones' will and force him to purchase cocaine from the Woods cousins.
 
 
 8
 Several of Jones' family members testified to his good character and reputation. In response, the government presented evidence of Jones' previous run-ins with the law. First, Memphis police officer Donald Robinson testified to having observed Jones making a sale of crack cocaine on August 14, 1990. Jones was arrested and tried, but a mistrial was declared. Jones is currently free on bond awaiting a retrial on this charge. Second, Tennessee Bureau of Investigation Agent Eric Patton testified that on October 9, 1990, he observed Jones receiving a shoe box containing two packages of what appeared to be cocaine from another suspected drug dealer, Elbert Payne. Jones was arrested and tried, but a mistrial was declared. Jones is free on bond awaiting a retrial on this charge as well. Last, a search warrant was executed at 2247 Clarksdale in Memphis on January 4, 1991, and several rocks of crack cocaine were discovered. Jones was arrested in a van outside the residence, but the case against him was dismissed.
 
 II
 
 9
 Jones appeals the district court's denial at the conclusion of the proof of his motion to dismiss the indictment because of outrageous government conduct. Jones argues that without this outrageous law enforcement activity leading up to his arrest, there would have been no drug transaction and hence no indictment. The Supreme Court has held that it is possible for the conduct of law enforcement agents to be so outrageous as to violate a defendant's due process rights. United States v. Russell, 411 U.S. 423, 431-32 (1973). Such conduct must be so egregious as to violate fundamental fairness and to be "shocking to the universal sense of justice." Id.; see also United States v. Barger, 931 F.2d 359, 363 (6th Cir.1991).
 
 
 10
 The existence or not of a due process violation is a conclusion of law, which we review de novo. See id.; United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990), cert. denied, 498 U.S. 1091 (1991). We have established a four-part test for outrageous conduct: "(1) the need for the police conduct as shown by the type of criminal activity involved, (2) the impetus for the scheme or whether the criminal enterprise preexisted the police involvement, (3) the control the government exerted over the criminal enterprise, and (4) the impact of the police activity on the commission of the crime." Barger, 931 F.2d at 363. Since these are "factors for consideration, not mandatory prongs in a test," not every one need be shown. Id.
 
 
 11
 The Need for Law Enforcement Activity.
 
 
 12
 Jones concedes that undercover operations are justified in investigating the drug trafficking business. "[T]he Supreme Court has repeatedly emphasized that the police may use artifice and stratagem." United States v. Robinson, 763 F.2d 778, 785 (6th Cir.1985).
 
 
 13
 The Impetus for the Scheme.
 
 
 14
 At the sentencing hearing, the district court found the trial testimony of the Woods cousins to be credible. That testimony established that the criminal enterprise of which the charged offense in this case was a part--namely, the sale of large quantities of cocaine by Big Man to Jones, for later distribution by Jones--preexisted the police involvement in the sale consummated on February 20, 1991. As the government points out, the demeanor and actions of Jones in handling this transaction indicate that he was quite comfortable with the procedures involved. The testimony about his prior run-ins with law enforcement agents provides further corroboration of a preexisting enterprise. "[T]he mere supplying of a crucial ingredient or means to commit a crime by itself does not violate due process." Robinson, 763 F.2d at 785. In Hampton v. United States, 425 U.S. 484 (1976), the Supreme Court allowed a conviction to stand even though a government informant supplied the defendant with the illegal drugs he later sold to undercover federal agents.
 
 
 15
 Control Over the Enterprise.
 
 
 16
 When government agents or informants act in concert with a defendant, the amount of control necessarily exerted by the government agents over the enterprise, in order to carry out the joint undertaking, does not violate due process. In Barger, we considered "insignificant" the fact that the undercover agent rather than the appellant created the plan which comprised a part of the appellant's charged offense. 931 F.2d at 364. The fact that the appellant adopted the plan as his own was held sufficient to overcome his due process objection. The same holds true for the case now before us.
 
 
 17
 The Impact of Law Enforcement Activity.
 
 
 18
 The involvement of government agents and informants in this case was significant, but Jones still maintained control over his own actions, gathering the cash for the deal and meeting Mel in the motel room at the designated time. The district court found that he maintained significant control over others, including those who accompanied him to the motel, sufficient to enhance his sentence based upon a leadership role. The court below also found that there was simply no indication in the record of any outrageous police conduct. We affirm those findings.
 
 III
 
 19
 Jones also moved at the conclusion of the proof for a judgment of acquittal based upon the defense of entrapment as a matter of law. The district court denied the motion and submitted the entrapment issue to the jury. Jones appeals that denial. Entrapment as a valid defense has two elements: (1) " 'government inducement of the crime' " and (2) " 'a lack of predisposition on the part of the defendant to engage in the criminal conduct.' " Barger, 931 F.2d at 366 (quoting Matthews v. United States, 485 U.S. 58, 63 (1988)). For a court to find entrapment as a matter of law, the
 
 
 20
 testimony and facts must be undisputed; a court may not choose between conflicting testimony or make credibility determinations. Furthermore, the undisputed evidence must demonstrate a 'patently clear' absence of predisposition. If either of these elements is missing, then the predisposition question is for the jury to decide.
 
 
 21
 Id. In making this determination, all evidence must be viewed in the light most favorable to the prosecution. Id.
 
 
 22
 There is a great deal of testimony in this case regarding Jones' predisposition to traffic in drugs, including the testimony of the two Woods cousins and that of various law enforcement officers. Jones' own testimony regarding his prior activities is therefore hardly undisputed. The district court correctly denied his motion for acquittal due to entrapment as a matter of law.
 
 IV
 
 23
 Jones argues that it was error for the district court to limit his counsel's cross-examination of DEA Special Agent James Akagi. We review a trial court's ruling on the scope of cross-examination under an abuse of discretion standard, "abuse being found where the trial court has interfered with the defendant's constitutional right." Dorsey v. Parke, 872 F.2d 163, 166 (6th Cir.), cert. denied, 493 U.S. 831 (1989). "[T]he Sixth Amendment has not been construed to give criminal defendants absolute control over cross-examination." Id.
 
 
 24
 It appears that counsel for Jones wished to cross-examine Akagi regarding the range of punishment for the charges against the Woods cousins. The district court disallowed this line of questioning of Akagi. It did allow, however, a thorough questioning of each of the Woods cousins regarding his potential sentence and possible motivation for participating as a government informant in the drug transaction at issue in this case.
 
 
 25
 While, as we have stated, we normally apply an abuse of discretion standard to a trial court's rulings on the scope of cross-examination, we have held that such a ruling that limits the cross-examination of the government's "star" witness must be "carefully scrutinized" on appeal. United States v. Brown, 946 F.2d 1191, 1195-96 (6th Cir.1991). In this case, however, the government's star witnesses were the two Woods cousins, whose cross-examinations were not limited at trial and to which no objection is made on appeal. Finding no interference in the trial below with Jones' constitutional right to confront hostile witnesses, we hold that the district court did not abuse its discretion by limiting the scope of Agent Akagi's cross-examination.
 
 V
 
 26
 Base Offense Level.
 
 
 27
 Jones contends that the base offense level for his sentencing was incorrectly determined. Big Man testified that he had previously dealt with Jones between twelve to fifteen times, delivering from five to eleven kilograms of cocaine each time. The probation officer who prepared the presentence report used this information to calculate a base offense level of thirty-six, based upon the possession of at least fifty kilograms of cocaine. He used the minimum figures, for both the number of transactions and the quantity per transaction, to compute a subtotal of sixty kilograms (twelve times five), plus the six on the night of the arrest, for a grand total of sixty-six kilograms to be attributed to Jones.
 
 
 28
 The district court found that Big Man's testimony concerning these prior transactions was credible and that Jones' testimony--in which he denied ever having trafficked in cocaine--was not. The district court also found that the testimony of the Woods cousins was mutually corroborating. Further corroboration came both from the testimony of the law enforcement officers concerning Jones' prior drug involvement and from Jones' actions on the night of the arrest. As a result, the district court set Jones' base offense level at thirty-six, which covers cocaine quantities between 50 and 150 kilograms. Jones requests a base offense level of thirty-two, which covers cocaine quantities between five and fifteen kilograms. Such an offense level would attribute to Jones only the six kilograms involved in the charged offense, and not the fifty kilograms calculated for the proven prior transactions.
 
 
 29
 Jones does not dispute that quantities of drugs not part of the count of conviction may be included in the base offense level calculation if such quantities were involved in acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. Sec. 1B1.3(a)(2). Such acts of "relevant conduct" are part of the same "common scheme or plan" if connected by a common factor, such as a common accomplice. U.S.S.G. Sec. 1B1.3, Application Note 9(A). See also United States v. Nichols, 979 F.2d 402 (6th Cir.1992), cert. granted (in part), 62 U.S.L.W. 3241 (U.S. Sept. 28, 1993) (No. 92-8556); United States v. Ushery, 968 F.2d 575 (6th Cir.), cert. denied, 113 S.Ct. 392 (1992); United States v. Smith, 887 F.2d 104 (6th Cir.1989).
 
 
 30
 Jones contends, however, that the Woodses' testimony is too imprecise and unreliable to be used in determining his base offense level. He claims that their testimony lacks the "minimum indicium of reliability beyond mere allegation" that we require. Smith, 887 F.2d at 108. The government must establish the base offense level for sentencing by a preponderance of the evidence. United States v. Sims, 975 F.2d 1225, 1242 (6th Cir.1992), cert. denied, 113 S.Ct. 1315, 1617, 1620 (1993). The district court's factual findings concerning sentencing, including the determination of the quantity of drugs attributable to a defendant, will not be disturbed, however, unless clearly erroneous. United States v. Perkins, 994 F.2d 1184, 1191 (6th Cir.), cert. denied, 114 S.Ct. 279 (1993); Sims, 975 F.2d at 1242. And to be clearly erroneous, a finding of fact must leave us with the "definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quotations omitted).
 
 
 31
 The district court's determination of the base offense level in this case derives from testimony the court found to be credible. The district court resolved any discrepancies or uncertainties in Jones' favor, attributing to him the lowest possible amount of cocaine computable from the ranges to which the Woods cousins testified at trial. This is consistent with Ushery and Sims and is based upon the admonition not to "hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which [he] is being held responsible." United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 498 U.S. 906, 989, 990 (1990). "There is no evidence that ... [the] informants suffered from any faultiness of memory or that their statements were mere guesses. Although there were some discrepancies, most of the informants' statements corroborated one another.... Thus, we cannot find the district court's ruling clearly erroneous." Ushery, 968 F.2d at 582.
 
 
 32
 Acceptance of Responsibility.
 
 
 33
 Jones argues that use of the entrapment defense does not disqualify him for a two-point reduction in his offense level based upon acceptance of responsibility. See United States v. Fleener, 900 F.2d 914 (6th Cir.1990). The government concedes this point, but argues that the reduction is not available to a defendant who "falsely denies, or frivolously contests, relevant conduct that the court determines to be true." U.S.S.G. Sec. 3E1.1, Application Note (1)(a). Such a defendant "has acted in a manner inconsistent with acceptance of responsibility." Id.
 
 
 34
 Although Jones does not now contest his responsibility in the transaction for which he was charged, he has denied under oath any involvement in prior drug trafficking. The district court did not credit Jones' testimony as to this relevant conduct. On the other hand, it believed the Woodses' testimony. Such findings of fact by the district court "are not to be reversed unless clearly erroneous." United States v. Phibbs, 999 F.2d 1053, 1080 (6th Cir.1993). Moreover, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." United States v. Morrison, 983 F.2d 730, 732 (6th Cir.1993). The district court's determination of acceptance of responsibility "will not be overturned unless it is without foundation." Id. We will not overturn that determination here.
 
 
 35
 Aggravated Role in the Offense.
 
 
 36
 Jones objects to the two-level enhancement assessed by the district court for his alleged leadership role in the activities constituting the relevant conduct for which he was sentenced. Such an enhancement can be based upon a finding that "defendant was an organizer, leader, manager, or supervisor" in criminal activity encompassing not only the charged offense but also all other activity that was part of a common scheme or plan or part of the same course of conduct as the charged offense. U.S.S.G. Sec. 3B1.1(c) and Introductory Commentary to Part B (referring to Sec. 1B1.3(a)(1)-(4)).
 
 
 37
 "A district court's determination of a defendant's role in the offense ... is a factual one which is reviewed under the clearly erroneous standard." United States v. Akrawi, 982 F.2d 970, 974 (6th Cir.1993). The government must establish the aggravated role by a preponderance of the evidence. United States v. Gonzales, 929 F.2d 213, 216 (6th Cir.1991). The district court found in the sentencing hearing that "if you look at all the proof, then it is obvious that Mr. Jones was a major player." We affirm this finding because we cannot say that it is either clearly erroneous or an abuse of discretion.
 
 
 38
 Obstruction of Justice.
 
 
 39
 Committing perjury is listed in the Sentencing Guidelines as an example of the type of conduct to which applies the two-point enhancement for willfully obstructing or impeding the administration of justice. U.S.S.G. Sec. 3C1.1, Application Note 3(b). Jones argues that United States v. Clark, 982 F.2d 965, 970 (6th Cir.1993) requires that this case be remanded so that the district court can "identify specifically which statements or actions by a defendant constitute an obstruction of justice." The Clark holding, however, sets out that this "requirement ... should be followed hereafter," id. (emphasis added), i.e., only after January 6, 1993, the date of its publication, and not retroactively to the November 13, 1992 sentencing hearing in the instant case. In Clark, it was held to be sufficient that the district court determined, based upon the totality of all the circumstances, that the defendant made statements during trial indicating to the court that he had failed to tell the truth in an attempt to impede the prosecution of the charges at hand. Id. at 969.
 
 
 40
 The district court here found that Jones "was not willing to tell the truth" about his past drug-related activities and that his "own untruthful testimony, ... if believed by the jury, might have resulted in an acquittal in this case...." This satisfies the Supreme Court's definition of perjury: "A witness testifying under oath or affirmation violates this [federal criminal perjury] statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony...." United States v. Dunnigan, 113 S.Ct. 1111, 1116 (1993). The district court found that Jones willfully gave false testimony under oath concerning a matter material to his entrapment defense, namely, his lack of predisposition to commit the charged offense. See United States v. Head, 927 F.2d 1361, 1372 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991) (for this enhancement to apply, defendant's false statement "must be such that, if believed, it would tend to influence the issue under determination").
 
 
 41
 Although "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding[,]" it is sufficient if "the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Dunnigan, 113 S.Ct. at 1117. We cannot say that the district court's credibility determination concerning Jones' testimony was erroneous or an abuse of discretion. See United States v. Bennett, 975 F.2d 305, 308 (6th Cir.1992). The district court found the Woods cousins and others to be credible witnesses, forcing the conclusion that Jones lied on the witness stand. Such a finding, not being clearly erroneous, is sufficient to support an enhancement of Jones' sentence for obstruction of justice.
 
 VI
 
 42
 For the reasons stated above, the jury verdict and sentence of appellant Ronald Jones are AFFIRMED.
 
 
 
 [1]
 The occupants of the LTD were not on trial with Jones