UNITED STATES of America,
Plaintiff–Appellant,

v.

Starry KNOX, Defendant–Appellee.

No. 99–6518.

United States Court of Appeals,
Sixth Circuit.

Aug. 21, 2001.

Before KEITH, SILER, and CLAY, Circuit Judges.

SILER, Circuit Judge.

The United States of America appeals the district court's grant of Defendant Starry Knox's motion for a new trial. The United States argues that the district

court abused its discretion because the factors it relied on to find cumulative error are not errors. Because the district court did not abuse its discretion, we AFFIRM the district court's grant of a new trial.

## I. BACKGROUND

In March 1996, Knox was implicated, along with co-defendants James Spencer and Smrkovski Buford, in a conspiracy to distribute approximately six kilograms of cocaine in violation of 21 U.S.C. § 846. After Spencer was arrested on narcotics charges in Memphis, Tennessee, he informed the local police and agents of the Drug Enforcement Agency ("DEA") that he was to deliver the cocaine to a person known as "Sam." DEA Special Agent Abe Collins recalled a 1993 investigation involving an individual named Starry Knox who used this alias. Spencer identified Knox as "Sam" from a series of photographs presented to him by Collins.[1]

Spencer called the number he had for "Sam" and arranged for "Sam" or someone else to come by a hotel room to pick up the narcotics. From the tape-recorded calls, Agent Collins recognized "Sam's" voice as that of Starry Knox based on his encounter with him during a 1993 arrest. Around midnight on March 13, 1996, Knox parked in the hotel lot. A few minutes later, Buford walked by Knox in his parked car and came to Spencer's room. After taking possession of the cocaine, Buford was arrested. Seconds later, Knox attempted to leave the parking lot but was stopped and arrested.

During a pre-trial hearing, defense counsel sought to prevent the identification of Collins as a DEA agent and any reference to Knox's 1993 arrest. The court rejected the requests, stating that the jury needed to know why Agent Collins was

talking to Knox in 1993, but it agreed to provide a limiting instruction if the arrest arose during testimony.

At trial, the court directed the government to provide a foundation for Agent Collins's testimony regarding his identification of Knox as "Sam." As part of that foundation, Agent Collins stated that he recognized Knox both by nickname and his voice based on information he obtained from the defendant when he was arrested in 1993. The court immediately and carefully instructed the jury to only consider the arrest reference for the purpose of showing an occasion when Agent Collins and Knox had spoken and thus why Collins recognized Knox's voice. The instruction also stated that the arrest should not be viewed as an indication of guilt or innocence, or relied on for any other purpose. Further, the court informed the jury that no legal action resulted from the arrest. These instructions were repeated during the jury charge. Agent Collins also testified that the 1993 charges against Knox had been dismissed on the government's motion.

When the DEA agents searched Knox's residence after his arrest, they discovered $102,000 in cash. At trial, Agent Collins testified that this amount was enough to purchase five kilograms of cocaine based on the $20,000 to $22,000 per kilogram market price in Memphis at the time. As a foundation for this testimony, Agent Collins was asked about his duties as a DEA agent and he stated that he investigated "major drug traffickers."

After Knox was convicted, he filed motions for a new trial based on cumulative error and for judgment of acquittal. While the district court denied the motion for judgment of acquittal, it granted the

---

1. The district court excluded the photo identification on a 1997 motion in limine and the government did not appeal this ruling.

motion for a new trial based on the prejudicial combination of the discussion regarding the 1993 arrest and Agent Collins's reference to investigating "major drug traffickers" as well as an unidentified erroneous ruling under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

## II. DISCUSSION

█ A district court's grant of a new trial as a remedy for cumulative error that resulted in a fundamentally unfair proceeding is reviewed for abuse of discretion. *See United States v. Pierce,* 62 F.3d 818, 833 (6th Cir.1995). In this case, the trial court determined that the cumulative effect of the following three errors warranted a new trial: 1) a reference to Knox's 1993 arrest and the accompanying limiting instruction to the jury; 2) its finding that testimony regarding a federal agent's investigation of "major drug traffickers" was more probative than prejudicial; and 3) its rejection of one of the defendant's peremptory challenges under *Batson.*

█ Federal Rule of Evidence 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of ("...") identity, or absence of mistake or accident....

Thus, "Rule 404(b) only bars evidence of 'prior bad acts,' ("...") that are offered to show criminal disposition or propensity. If the evidence has independent purpose, its admission is not prohibited by Rule 404(b)." *United States v. Ushery,* 968 F.2d 575, 580 (6th Cir.1992) (citation omitted).

█ The admission of evidence regarding "other crimes, wrongs, or acts" under Rule 404(b) is reviewed under a three-part standard:

1) the district court's factual determination that the other acts occurred is reviewed for clear error;

2) the lower court's legal determination that the evidence was admissible for a legitimate purpose is reviewed *de novo;* and

3) the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effects is reviewed for abuse of discretion.

*See United States v. Brown,* 147 F.3d 477, 482–83 (6th Cir.1998) (citation omitted).

The United States argues that the district court abused its discretion in granting a new trial because no cumulative error exists. First, it asserts that Agent Collins's testimony regarding Knox's 1993 arrest did not constitute "prior bad acts" evidence as the jury heard nothing about the facts that prompted the arrest and was specifically informed that the arrest resulted in no further legal action. As such, the jury had no direct evidence of a "prior bad act" from which to draw an impermissible inference. Second, the government argues that the admission of the arrest testimony was intrinsic to the charged offenses as Agent Collins's encounter with Knox in 1993 enabled him to identify the defendant's voice and this identification determined the course of the investigation. Third, it states that under Rule 404(b), the arrest testimony is permissible evidence of identity and credibility as it dealt with the material issue of whether Agent Collins's prior encounter with Knox occurred in a context sufficient for Collins to recall and recognize Knox's voice.

█ The government's first two arguments are flawed. First, it is correct that no details were given about the 1993 arrest other than its occurrence and the dismissal of the charges; however, detailing an event or act is not the standard for "other crimes, wrongs, or acts." Rather, it is a

reference indicating prior criminal misconduct. *See United States v. Terry*, 729 F.2d 1063, 1069–71 (6th Cir.1984) (inadmissible "prior bad acts" included defendant's self-incriminating statements about his criminal activity and non-detailed statements by government witnesses about the defendant being on parole, consorting with felons, and being a convicted felon). Here, the reference to a prior arrest without further explanation qualifies as a "prior bad act" indicating that Knox has a criminal history.

 Second, the United States misapplies the law regarding intrinsic evidence. This court has stated "that Rule 404(b) does not apply where the challenged evidence is 'inextricably intertwined' with evidence of the crime charged in the indictment." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995). Extrinsic acts include other crimes or wrongs which "occurred at different times and under different circumstances from the offense charged," while intrinsic acts "are those that are part of a single criminal episode." *Id.* Thus, the 1993 arrest was an extrinsic act as it resulted from a separate investigation of criminal activity unrelated to the current drug charges.

 In applying Rule 404(b), neither party disputes that the 1993 arrest occurred; however, they disagree on whether the evidence was admitted for a legitimate purpose. Knox argues it was presented only to demonstrate his propensity for criminal drug activity, while the government asserts it was offered for the purposes of identity and credibility. From the record, Agent Collins's credibility in identifying Knox's voice after the

passage of time was a pivotal factor. The district court correctly recognized that the context of the contact between Collins and Knox was a relevant, material issue regarding the identification of the taped voice and the absence of mistake. Thus, the arrest reference was admissible under Rule 404(b) for purposes other than proof of the defendant's character.

 In reviewing the district court's initial finding that the probative value of the 1993 arrest reference outweighed its prejudicial effect, "we consider (1) whether the other act evidence was unduly prejudicial; (2) the availability of other means of proof; (3) when the other acts occurred; and (4) whether the district court gave a limiting instruction." *Brown*, 147 F.3d at 483. First, Agent Collins's only basis for recognizing Knox's voice was the 1993 arrest when he interviewed the defendant and learned his aliases. Based on the passage of two and a half years, the extent and circumstances of the interview impacted the probative value of the agent's identification. By mentioning an arrest, the defendant's presumption of innocence could suffer, but, likewise, a sanitized reference to the encounter could generate potentially damaging jury speculation on how and why Agent Collins and Knox had met and what legal consequences followed. As a result, the court gave a thorough instruction to the jury explaining that the arrest reference's limited purpose was for evaluating Collins's credibility in identifying Knox and pointing out that nothing came of the arrest. Thus, the district court's original determination that the probative value of Agent Collins's reference to the arrest context of the interview outweighed its prejudicial effect was correct.[2]

---

2. Knox argues that the trial court did not explicitly weigh the probative and prejudicial qualities of the arrest reference, and this Court must look to the lower court's balancing analysis in granting the motion for a new trial. In contrast, the United States argues

that the district court's statements admitting the arrest reference demonstrate that it explicitly weighed the evidence. The record demonstrates that Knox did not ask for an explicit ruling on the probative/prejudicial

In addition, it gave a limiting instruction to the jury regarding its sole purpose in the trial in order to cure potential prejudice. *See Ushery,* 968 F.2d at 580.

■ Under Fed.R.Evid. 403, evidence may be excluded "only where its relevance is 'substantially outweighed by the danger of unfair prejudice.' " *United States v. Smith,* 736 F.2d 1103, 1107 (1984). In applying Rule 403's balancing test, this Court " 'must look at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect .' " *Id.* (citing *United States v. Brady,* 595 F.2d 359 (6th Cir. 1979)); *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993). During Agent Collins's testimony about the street value of cocaine sold in Memphis and whether the amount seized was associated with personal or distributional use, he stated that he investigated "major drug traffickers." This comment was relevant to the source of Collins's knowledge about the illegal narcotics trade, and its value was arguably more probative than prejudicial.

■ The fundamental battleground in this case, however, is whether the district court properly balanced the prejudicial and probative factors raised by the cumulative effect of Agent Collins's reference to the 1993 arrest, the court's related jury instruction, and the agent's statement that he investigated "major drug traffickers." While we might not grant a new trial if the *de novo* standard of review applied, the record does not show that the district court abused its discretion in granting a new trial.

"[T]he district court enjoys broad discretion in balancing probative value against potential prejudicial impact." *See United States v. Layne,* 192 F.3d 556, 573 (6th Cir.1999) (citing *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991)). In its reevaluation, the district court relied on *United States v. Parker,* which held that while errors in isolation may be harmless, their cumulative effect can be "so prejudicial as to strike at the fundamental fairness of the trial." 997 F.2d 219, 222 (6th Cir.1993). It determined that Agent Collins's testimony and its own jury instructions regarding the 1993 arrest were in error based on prejudice because the resulting discussion of the arrest "may have precluded the defendant [from] having the benefit of the presumption of innocence." Thus, the jury instruction was not potentially curative but condemning. The district court further stated that Collins's "major drug trafficker" comment exacerbated the prejudicial effect of the arrest testimony and jury instruction. On the combined effect of these three errors, it granted Knox's motion for a new trial.

In reviewing the record as a whole, the district court properly exercised its discretionary authority to balance probative and prejudicial factors, and did not abuse its discretion in granting a new trial based on its finding of cumulative prejudicial error. In addition, the trial court made a vague reference to an error in disallowing one of two peremptory challenges by Knox, an African–American male, against jurors Roy B. Van Arsdale and David Johnson, white males, as a reason for granting a new trial. Though the record does not clearly identify the *Batson* error relied on by the district court, we need not examine

question at pre-trial. In addition, it shows that the balancing analysis occurred and the court's determination is subsumed in its ad-

mission of the evidence. *See United States v. Acosta–Cazares,* 878 F.2d 945, 949–51 (6th Cir.1989).

the merits of this issue as the case is resolved on other grounds.

AFFIRMED.